MARY DOYLE *et al.*, and THOMAS LEWIS, Administrator of the estate of Maurice Doyle, deceased, Plaintiffs in Error, *v.* PATRICK MURPHY AND WIFE,· Defendants in Error.

ERROR TO WILL.

Courts of equity will not assume jurisdiction to establish a trust in every case where confidence has been reposed or a credit given.

Money delivered to a person to pay debts, which he converts to his own use, does not enable the heirs of the party who reposed confidence, to convert it into a trust fund.

If a party abstracts securities not entrusted to him, and substitutes forged securities in their place, ·this does not create the relation of trustee, and *cestui que trust.*

Where a testator bequeaths a debt due him, to a legatee, the legatee cannot resort to a court of equity for its recovery.

Bills for the marshaling of assets are only entertained in cases where various creditors claim equitable liens, in priority of others. As where one creditor may resort to two funds, and another to but one.

Doyle et al. *v.* Murphy et ux.

THIS bill of complaint sets forth: That Honora Teresa Murphy, wife of said Patrick, is the daughter of one Catherine Byrne (deceased), late of the town of Borris, in the county of Carlow, in Ireland; that Patrick and Honora were married in Ireland, in November, 1850, and shortly after removed to the United States, where they arrived in the fall of 1851; that the said Catherine Byrne died in 1849, leaving a will, which after her death was duly proved and admitted to record in the proper court in Ireland, in and by which will Honora was made executrix and sole legatee of the entire property, freehold, chattel, personal or real, and of every other description whatsoever, of which Catherine died seized or possessed, subject to the payment of the debts of Catherine and of fifty pounds, sterling, to Patrick Byrne, brother of Honora Teresa. That some time in the year 1831, Catherine Byrne placed in a safe belonging to her, and which she put into the possession of Maurice Doyle, who was then living in Dublin, certain bank debentures, the property of said Catherine, and which were of the value of one thousand pounds, sterling—that the safe and bank debentures therein, were placed in the care and possession of said Maurice, at Dublin, for safe keeping; that Catherine locked the safe and kept the key thereof in her own possession; that the safe, with the said bank debentures, remained in the possession of the said Maurice until some time in the latter part of the year 1834, when Maurice, by means of false keys, abstracted and took from said safe said bank debentures and sold the same, and converted the proceeds thereof to his own use, and placed in said safe, false and forged bank debentures, of like tenor, date and amount with said real bank debentures, with the intention and design of cheating said Catherine out of the value thereof, and that they were then of the value of four thousand eight hundred and forty dollars. That from the year 1831 to the year 1834, Catherine was engaged in the mercantile business, in the said town of Borris, and was accustomed to purchase goods, mostly in the city of Dublin, and that she was accustomed to place money in the hands of Maurice Doyle, at different times, amounting, in all, to the sum of six hundred and forty or fifty pounds, sterling, for the purpose of paying for goods which she had bought of divers persons in Dublin; and that when she placed said moneys in his hands, she also placed in his hands the different invoices of goods she had purchased in Dublin, and for the payment of which she placed the moneys in his hands; that said Maurice forged receipts to the said several invoices or bills of goods, to the full amount of the moneys placed in his hands, and sent the said invoices, with the receipts forged thereon, to said Catherine, showing, apparently, that the same

had been paid, and converted to his own use said moneys, amounting, in the currency of the United States, to the sum of $3,097.60, or $3,146, which he never afterwards paid to Catherine. That in the month of December, 1834, Maurice Doyle absconded, and left Ireland for parts unknown, taking with him the money of said Catherine, and that neither said Patrick, nor Honora, knew of the whereabouts of said Maurice, until some time after their arrival in the United States, they learned that he had, for a number of years, been residing at Springfield, in Illinois, and had for a number of years been engaged in business at that place. That some time in the month of June, 1851, Maurice Doyle, while returning from Europe to America, died, intestate, leaving a large amount of property at Springfield aforesaid, and leaving the said Mary Doyle his widow, and the said Henry Doyle, Ambrose Charles Doyle, Frederick Doyle and Margaret Helen Doyle, his children and heirs at law. That some time after the death of said Maurice, Thomas Lewis was appointed by the County Court of Sangamon county, administrator of the estate of said Maurice, and took upon himself the administration of said estate, and that he has a large amount of assets of said estate in his hands.

And prayed that said Thomas Lewis, and above named widow and heirs at law of Maurice Doyle, be made defendants, the answer of each of them under oath being waived; and that said Thomas Lewis be required to answer specifically, whether or not, he has been appointed administrator of said estate, and taken upon himself the administration of said estate; and that he be required to file a copy of his letters of administration, in this suit; and that he answer and set forth particularly and specifically, all and singular, the goods, chattels, lands, tenements, moneys, credits, and other things of value which have come to his hands and possession or control, or which have come to his knowledge, belonging to said estate, and the value thereof, and what has been done with the same, and how much he has in his hands and control, and what it consists of, and that he be decreed to pay to complainants the full amount of the value and proceeds of said bank debentures, and the amount of the moneys received by said Maurice, to pay said invoices, or bills of goods, together with interest thereon to the time of making said decree, or in case said assets are not sufficient, then that he pay the whole of said assets to complainants; and that the other of the defendants be decreed to be barred and precluded from recovering anything belonging to said estate, until the claim of complainants shall be fully paid and satisfied.

Bill sworn to by Honora Teresa Murphy.

There was a demurrer to the bill, to which there was a joinder, both of which were withdrawn.

Thomas Lewis, administrator, filed his answer; and says that the several allegations contained in the bill of complaint, respecting the said bank debentures, and the conversion thereof by Maurice Doyle, may be true, but he will neither admit nor deny the same, and calls for proof. Admits the decease of Doyle, and the issuing of the letters of administration to himself, as charged in the bill, and that he has, as assets belonging to the estate of said Doyle, in money, $7,036.10, notes and claims in favor of said estate, $4,498.45—in all, amounting to $11,534.55.

Replication to answer of Lewis was filed.

The bill was taken as confessed by all of the defendants, except defendant Lewis.

Proof of publication of notice, as to defendant Doyle, was filed.

The deposition of Honora Teresa Murphy, said defendant, Lewis, by his counsel, consenting thereto, was taken, touching the truth of the allegations contained in the bill of complaint, by a master, who was ordered to compute and report as to the amount, if anything, due and owing to said complainants, in manner and form alleged in said bill of complaint, and that he make such report in the premises with all convenient speed.

The master's report finds as follows:

That it appears from the deposition taken before me in this cause, that one Catherine Byrne, in her lifetime, and some time in the year 1832, deposited for safe keeping, an iron safe, containing bank debentures to the amount of £1,000, English sterling, with one Maurice Doyle, he then living and doing business in Dublin, Ireland, but since deceased; that the said Doyle continued to have possession of said safe until the fall of 1834. That said Catherine Byrne was then residing and engaged in the mercantile business, at Borris, in the county of Carlow, Ireland, about fifty-two miles from Dublin; and that she continued to reside there up to the time of her death. It further appears, that the said Catherine was in the habit of sending to said Doyle sums of money, up to as late as the latter part of the year 1834, to pay her merchants and creditors in Dublin; and it further appears, that said Maurice Doyle extracted said debentures from said safe, by means of a false key, and that he sold and appropriated the proceeds to his own use; and that he placed in said safe, instead of said debentures, forged ones, purporting to be of an equal amount and similar in every respect to the genuine ones. And further, that he appropriated several sums of money to his own use, so sent to him by said Catherine to pay her debts, as aforesaid, and that he forged receipts, and vouchers, and re-

33

Doyle et al. *v.* Murphy et ux.

turned them to her as having faithfully paid said sums according to her directions. That the several sums proved thus to have been obtained, amounted to the sum of £605 10*s.* sterling, English currency; and that some time in the year 1834, she loaned said Doyle £40, same currency; and further, that in December, 1834, said Doyle left Ireland, without the knowledge of said Catherine, until after he had gone, and without refunding any of said funds to said Catherine.

That the aggregate of all the sums of money which the said Maurice Doyle, in his lifetime, obtained from the said Catherine Byrne, in the manner aforesaid, was £1,645 10*s.* sterling, English currency; that the value thereof in United States currency was $7,964.22; that the interest thereon since the 15th day of November, 1834, to the present time, at six per cent. per annum, amounts to $9,318.26; that the whole sum now due from the estate of Maurice Doyle, deceased, to the complainants, in the manner above set forth, is the sum of $17,282.48. It further appears, from the answer of Thomas Lewis, administrator of the estate of Maurice Doyle, deceased, that there is now in the hands of said administrator, as assets of the estate of Maurice Doyle, deceased, the sum of seven thousand and thirty-six and ten one-hundredths dollars, after deducting the amount of all the claims heretofore allowed and proved up against the said estate; that the amount of assets, including claims and demands, belonging to said estate in the hands of said administrator, is eleven thousand four hundred and thirty-four and fifty-five one-hundredths dollars.

There was an order confirming said report, and a decree: That complainants have judgment against said Thomas Lewis, as administrator of said estate, for the sum of seventeen thousand two hundred and eighty-two dollars and forty-eight cents, and that said defendant pay the same in due course of administration; and that the other of the defendants, and each of them, be foreclosed and barred from having or recovering any of the assets belonging to said estate, until such time as said sum of seventeen thousand two hundred and eighty-two dollars and forty-eight cents, and the costs of suit in this cause, be fully paid and satisfied to said complainants.

The following errors were assigned:

1st. It appears from said bill of complaint that the defendants therein, Mary Doyle, Henry Doyle, Ambrose Charles Doyle, Frederick Doyle and Margaret Helen Doyle, were not, at the time of the commencement of said suit, nor were either or any of them, residents in, or citizens of the State of Illinois; but that they, each and all of them, resided in Ireland, in the Kingdom of Great Britain and Ireland; and the other and

remaining defendant, the said Thomas Lewis, resided, at the time of the commencement of said suit, in the county of Sangamon, in the State of Illinois, and not in the county of Will; and said suit should have been instituted in the county of Sangamon, as required by the statute in such cases, and the said Circuit Court of Will county had no jurisdiction thereof.

2nd. That it does not appear from the bill of complaint filed in said cause, nor from the record and proceedings therein, that any letters testamentary or of administration to administer upon the estate of the said Catherine Byrne, deceased, were ever issued by any court of this State, or even by any court of any foreign State or jurisdiction, to the said Honora Teresa Murphy, or to the said Patrick Murphy.

3rd. The said complainants have not by their said bill of complaint, made such a case as entitles them, in a court of equity, to any discovery from the defendants therein, or any of them, or any relief against them. Nor does the said bill of complaint contain any matter of equity whereon said Will county Circuit Court could ground any decree, or give said complainants any relief or assistance as against said defendants.

4th. The said Circuit Court of Will county, erred in entering the order aforesaid in said cause, that said bill of complaint be taken as confessed by the said defendants, Mary Doyle, Ambrose Charles Doyle, Henry Doyle, Frederick Doyle, and Margaret Helen Doyle.

5th. The said court erred, in directing the order aforesaid, that the deposition of said Honora Teresa Murphy, one of the complainants, be taken in said cause, and receiving the deposition of said Honora Teresa when taken, as evidence in said cause.

6th. The said court also erred in approving and confirming the report of the master in chancery, made in said cause, and by its judgment and decree thereon, awarding and giving judgment in favor of said complainants, and against said defendant, Thomas Lewis, as administrator of said estate of said Maurice Doyle, for the sum of seventeen thousand two hundred and eighty two dollars and forty-eight cents, and costs of suit, and directing the same to be paid in due course of administration of the affairs of said estate, and adjudging and decreeing that said defendants, the said Mary Doyle, Ambrose Charles Doyle, Henry Doyle, Frederick Doyle and Margaret Helen Doyle, be barred and foreclosed from having and receiving any portion of the moneys, goods, chattels, rights and credits, belonging to the estate of said Maurice Doyle, deceased, until said sum and costs of suit should be fully paid and satisfied; whereas said court should have decreed that said bill of complaint be dismissed.

HOYNE, MILLER & LEWIS, and M. A. RORKE, for Plaintiffs in Error.

W. B. SCATES, and U. OSGOOD, for Defendants in Error.

WALKER, J. It is urged, in connection with other grounds, for the reversal of the decree of the court below, that the court had no jurisdiction of the subject matter. While by the defendants in error, it is insisted that Maurice Doyle was a trustee, and being such, a court of equity has undoubted jurisdiction over the trust fund. That the court has such a jurisdiction in cases of strict trust, there is no doubt. But it does not therefore follow, that the court will assume jurisdiction in every case where a mere confidence has been reposed, or a credit given. The various affairs of life in almost every act between individuals in trade and commerce, involve the reposing of confidence or trust in each other, and yet it never has been supposed that because such a confidence or trust in the integrity of another has been extended and abused, that therefore, a court of equity would in all such cases assume jurisdiction. When one person sells property on credit, or loans money to another, confidence is reposed and a trust is entertained that the money will be paid by the debtor, and yet no case has gone so far as to hold, that it was such a trust, as gave to a court of equity jurisdiction under the head of trusts. If this were so, there would be no case where property or money was obtained on a credit, in which the court would not have jurisdiction. But on the other hand, when property is conveyed or given by one person to another, to hold for the use of a third person, such a trust is thereby created, as authorizes the court of equity to entertain jurisdiction, to compel its application to the purposes of the trust. And the property may be pursued into the hands of all persons who have obtained it with notice of the trust, or where it has been converted into money, the money may be recovered, or where the money arising from the sale of trust property or funds, has been invested in other property, a court of equity will compel the trustee to account for the property thus acquired, and treat it in every respect as if it were the original trust property. In this case the bill alleges and one of the complainants swears, that money was delivered to Maurice Doyle to pay certain debts of Catherine Byrne, which he failed to so apply. If he failed to pay this money, there was such a breach of contract, as would have authorized Catherine Byrne to maintain an action for money had and received, and probably the creditors to whom the money should have been paid might have maintained the action. But according to no rule or

adjudged case that we are aware of, was it a trust fund, authorizing Mrs. Byrne or her representatives to recover as a trust fund. If it was a trust fund, it was such for the benefit of her creditors, and they would alone have had the right to pursue it in equity, and her representatives have no better or greater right than she held.

Again it was insisted that when the debentures were left in the safe which was left with Maurice Doyle, that he thereby became a trustee, and that they became a trust fund. This complainant swears that the debentures were placed by Mrs. Byrne in an iron safe, locked by her, and the keys kept in her possession, and the safe thus locked was left with him, and that he by false keys opened the safe, and abstracted the debentures, and placed in their stead false and forged debentures, for a similar amount. This evidence, if it is to be credited, shows the want of all confidence and trust in Maurice Doyle, as the safe containing these choses in action, was locked against him, and the keys retained from him. The debentures were not placed in his possession as such, but they were locked against him. She gave him no power over them, but manifestly intended that he should have none. And if he ever acquired the possession of them, it was by larceny, or at the least by a trespass, when he committed a forgery. And the acquisition of property by either larceny or trespass, it is believed, has never been held to create the relation of trustee, and *cestui que trust.* And this is what the charge in the bill, and the evidence in its support, if it were believed, amounts to, and nothing more. If such facts were held to create a trust, the court would have jurisdiction in every case of larceny, and trespass *de bonis asportatis.* We think if the evidence might be regarded as true, this was not a trust fund, nor was the money placed in his hands for the creditors, such a fund.

It was likewise insisted, that the court had jurisdiction be- cause this money was bequeathed by Catherine Byrne, to Honora Teresa Murphy. It is undoubtedly true, that in cases of a bequest by a testator to a legatee, until the executor assents to the bequest, the only means of recovering it by the legatee, is by a resort to equity. In such a case, the legal title vests in the executor, for the purpose of first discharging the debts, and if not required for that purpose, then for the legatee, and the legatee by the will takes the equitable title to the bequest, subject to the debts against the estate. It is only in cases where the executor and legatee take under the same will, that the court has jurisdiction to decree the delivery or payment of the bequest. We have not been referred to any case, nor is it believed that any such exists, where it has been held, that where a tes-

tator bequeaths a debt due him to a legatee, that he may resort to a court of equity for its recovery. If Maurice Doyle had by his will bequeathed this money to this complainant, then she might have resorted to her bill against these defendants. By virtue of this bequest from her mother, she did not acquire the relation, to the administrator of Maurice Doyle, of a *cestui que trust*. She by that will became the executor if she obtained letters testamentary, and thereby became a creditor of Maurice Doyle's estate.

It was moreover urged, that this bill might be treated as a proceeding for the marshaling of the assets of Doyle's estate. Such bills are only entertained in cases where various creditors claim equitable liens, some in priority of others. Where some of the creditors have liens on the common fund and upon another fund, upon which the others have no lien ; as where there exists two or more funds, and there are several claimants against them, and at law one of the parties may resort to either fund for satisfaction, but the others can only look to one of them ; courts of equity exercise the authority to marshal the funds, and by this means enable the parties, whose remedy at law is confined to one fund only, to receive due satisfaction, on the principle of the maxim, " *sic utere tuo ut alienum non lædas*,"— use your own in such manner as not to injure another. In this case there are no facts or circumstances which can give the court any jurisdiction to marshal assets. There are not creditors or others having liens on different funds, requiring the interposition of the court. The facts only show the complainants to be creditors of this estate, and entitled to file and prove up their account, in the same manner as any other creditor. The remedy at law became adequate and complete, if Doyle ever appropriated the money and debentures to his use, and they must be left to seek their remedy in that form.

If a court of equity was to entertain jurisdiction in this case, upon either of the grounds upon which it is urged, it is believed that few if any cases could occur, where an estate was indebted, that it might not do so with equal propriety to enforce payment of such debts. And it would tend to destroy the effect of the 115th section of the statute of Wills, which has divided debts owing by estates of deceased persons, into classes. To treat such creditors as *cestuis que trust*, and a sufficient amount of the estate to discharge their claims, as trust funds for their discharge, would place all debts in the same class. Such we have no hesitation in saying is not the law.

The decree of the Circuit Court must be reversed, and the bill dismissed.

*Decree reversed.*