# HENRY H. WEER

## v.

# HATTIE B. GAND.

1. APPEAL FROM COUNTY COURT—*who entitled to, from order transferring claim from seventh to sixth class.* Where a guardian dies, having in his hands funds belonging to his ward, his surety on the guardian's bond, although not a party to the record, has a right to appeal from an order of the county court transferring a claim other than the ward's, allowed as of the seventh class, against the estate of the deceased, and ordering the administrator to pay it as of the sixth class.

2. ADMINISTRATION—*of a trust estate.* Where a party voluntarily places his property in the hands of another, to control and manage for him as his agent, and afterwards, upon a settlement, takes the note of his agent for the indebtedness due him, and the agent dies, the indebtedness will not be allowed as a claim of the sixth class against the estate of the deceased, notwithstanding he acted as the confidential adviser of the creditor in the management and control of the property so placed in his hands. The relation between the parties was not that of trustee and *cestui que trust*.

APPEAL from the Circuit Court of Macoupin county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. S. S. & E. A. GILBERT, for the appellant.

Mr. HORACE GWIN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Hattie B. Gand, appellee, presented a claim in the county court of Macoupin county, against the estate of Charles W. Weer, which was allowed in the seventh class of claims. Subsequently, she presented a petition to the county court, praying that her claim be transferred and ordered paid as a claim of the sixth class. This order was granted, and the administrator appealed to the circuit court, where the judgment of the county court was affirmed.

It appears that Charles W. Weer, deceased, was, in his lifetime, guardian of one Virginia Whitaker, and died with a large amount of money belonging to his ward in his hands. The ward presented a claim against his estate, which was allowed and ordered paid as a claim of the sixth class. The appellant was surety on the guardian's bond executed by Weer, and when appellee obtained a judgment of the circuit court that her claim should be paid as a sixth class debt, he appeared, prayed for and obtained an appeal.

The first question presented by the record is, whether, under the statute, appellant had such an interest in the subject matter of the litigation as gave him the right of appeal. Sec. 123, chap. 3, R. S. 1874, page 126, provides, "Appeals shall be allowed from all judgments, orders or decrees of the county court, in all matters arising under this act, to the circuit court, in favor of any person who may consider himself aggrieved by any judgment, order or decree of such court, and from the circuit court to the Supreme Court, as in other cases, and bonds with security to be fixed by the county or circuit court, as the case may be." This act expressly confers the right of

appeal upon any person aggrieved. It does not seem to be essential that the person aggrieved should be a party of record to the litigation in which the judgment may be rendered. The only question, then, is, whether appellant was aggrieved by the judgment rendered in this case, and upon this point we entertain no doubt.

While appellee's claim remained in the seventh class, there were probably funds sufficient in the hands of the administrator to pay and discharge all claims allowed in the sixth class, which would release appellant from all liability on the guardian's bond; but when appellee's claim was transferred to the sixth class, it would of course share with the claim allowed in favor of Virginia Whitaker, and as the funds would not be sufficient to pay both in full, that would leave appellant liable on the guardian's bond. Appellant was, therefore, clearly aggrieved by the action of the court, and, under the statute, had the right to appeal.

The next question, and indeed the important one in the case, is, whether appellee's debt against the estate of Chas. W. Weer is of such a nature that it falls within the sixth clause of sec. 70, chap. 3, R. S. 1874, page 116, which provides, " Where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for, as a sixth class claim." Was the money held by the deceased received in trust for any purpose? The facts in regard to the transaction are not in dispute. Appellee received from her father's estate some $6000 in money and notes, which she placed in the hands of Weer, for safe keeping. This property Weer deposited in a. bank, and as money was collected from time to time, it was placed to the credit of Weer in the bank. He kept an account with appellee, furnishing her money as she called upon him, and charging himself with interest on her funds in his hands. Finally, Weer furnished appellee a complete statement of the whole transaction, which showed the amount due from him, and, in settlement of the account, he gave her his promissory

notes for the amount shown to be due. There is no doubt in regard to the fact that appellee reposed confidence in Weer; that he acted as a confidential adviser, agent, and finally became a debtor, but from these relations it by no means follows that a trust arose, or that the relation of trustee or *cestui que trust* existed.

Where one person employs another as an agent, loans money or sells property on credit, a confidence and trust is imposed, to a greater or less extent, and yet such transactions have never been regarded by courts as falling within any recognized class of trusts.

Story, in his Equity Jurisprudence, sec. 964, says: "A trust, in the most enlarged sense used in English jurisprudence, may be defined to be an equitable right, title or interest in property, real or personal, distinct from the legal ownership thereof; in other words, the legal owner holds the direct and absolute dominion over the property, in view of the law; but the income, profits or benefits thereof in his hands belong wholly or in part to others."

Lord HARDWICKE, in *Stuart* v. *Mellish*, 2 Atk. 612, defines a trust in these words: "A trust is where there is such confidence between parties that no action at law will lie, but is merely a case for the consideration of this court."

Law writers often divide trusts into four general classes, with reference to their creation: express trusts, implied trusts, resulting trusts, and constructive trusts. The facts of this transaction do not bring it within the definition of either. Perry on Trusts, 13. Nor are we aware of any principle of law under which the money due from the deceased to appellee can be regarded as a trust fund. Had property been conveyed to or placed in the hands of the deceased by appellee's father, or some other person, to hold for the use and benefit of appellee, then a trust would have been created which a court of equity would have protected, and compelled the application of the property to the uses and purposes of the trust, but such is not this case.

Appellee voluntarily placed her property in the hands of Weer, to control and manage for her. Upon a settlement, he became her debtor, and gave his notes as evidence of the indebtedness. She occupied the same relation to the estate, upon the death of Weer, as any ordinary creditor. The case, in principle, does not differ from *Doyle* v. *Murphy*, 22 Ill. 502, where it was held that courts of equity will not assume jurisdiction to establish trusts in every case where confidence has been reposed, or a credit given. See, also, *Steele* v. *Clark*, 77 Ill. 471.

We are of opinion the court erred in allowing appellee's claim in the sixth class, and for that reason the judgment will be reversed and the cause remanded.

*Judgment reversed.*