Peter Svanoe *et al.*

*v.*

Axel Jurgens.

*Filed at Ottawa, March* 31, 1893.

1. Agency — *agent holds money of his principal in trust.* An agent who receives the money of his principal will hold the same in trust, and must be held strictly to the liability of a trustee as between himself and the party for whom he acts. But in the case of ordinary agency no preference is given to such moneys over other claimants against the estate of the debtor.

2. Administration of estates — *classification of debts — money in hands of an agent.* Where an agent of a bank sold its drafts on foreign countries, and received the moneys paid by the purchasers of such drafts, which he was to account for to his principal, and died with money in his hands from such sales unaccounted for: *Held,* that such money was not held by such agent as "in trust for any purpose," within the meaning of clause 6, of section 70, of chapter 3, Revised Statutes, and that the allowance of a claim for such indebtedness as of the sixth class was erroneous.

3. Statute construed. *Section* 70, *of chapter* 3, *Revised Statutes,* giving a preference of claims against estates when they are for money received by the decedent " in trust for any purpose," was not intended to embrace all kinds of trusts in the broadest meaning of the term, as including factors, agents, etc. The word " trust " is used in the more restricted sense of the term as referring to special trusts, and not those which the law implies from the contract.

4. Appeals and writs of error — *amount involved.* The Appellate Court affirmed the judgment of the Circuit Court, allowing a claim of $1219 against an estate, and directed its payment as a sixth class claim. The estate was able to pay all the sixth class claims, but not the seventh class claims in full, and the administrators appealed to this court: *Held,* that this court had jurisdiction of the appeal. The right of a party to a judgment in the Appellate Court to bring the case to this court by appeal or writ of error, is not limited by the amount affected by the error assigned, but by the amount involved in the action.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county ; the Hon. R. S. Tuthill, Judge, presiding.

The appellee presented in the Probate Court of Cook county his claim for $1219.81 against the estate of I. T. Relling, deceased, of which the appellants are administrators, and it was allowed as of class 7. He took an appeal to the Circuit Court of said county, where a jury was waived by agreement and the cause submitted for trial to the court without a jury, and a judgment for the same amount was rendered in his favor on February 1, 1892, as of the sixth class of claims enumerated in the statute to be paid in due course of administration. The administrators took an appeal to the Appellate Court, where the judgment of the Circuit Court has been affirmed. The case is brought here by appeal from the Appellate Court.

I. T. Relling died on February 5, 1891. In his lifetime he kept a book store on Milwaukee avenue in Chicago, selling Scandinavian books and publishing a Norwegian newspaper. He also sold drafts on foreign banks for appellee, who was the western passenger agent of the American Steamship Company. The general agents of this company in Philadelphia were Peter Wright & Sons, and the representative of the latter in Chicago was Jurgens, the appellee, who had an office and bank at 88 LaSalle street in Chicago. Appellee would send to Relling at his store a book of blank drafts drawn on foreign banks by Peter Wright & Sons, to be sold by Relling. The book usually contained about twenty-five of these drafts for limited amounts. The drafts were numbered, and when sold, would be filled up with the amounts and names of the payees. They usually came back from Europe to Wright & Sons in from two to four months, and appellee was responsible to them for the money. Relling would sell the drafts and turn over the proceeds to the appellee. He received no commissions for making the sales, but was to remit at certain rates mailed to him monthly by appellee. These rates varied according to the fluctuations of the market. Appellee kept a memorandum of the numbers of the drafts, and would call upon Relling at intervals of several months to see how many drafts were sold or remained unsold.

No discrepancies were ever found between the drafts on hand and the reports of sale. Relling was charged with the drafts delivered to him by their numbers and credited with the money remitted when a draft was sold. Appellee accounted monthly with Wright & Sons for the drafts received by him. Business was done in this way between appellee and Relling for a number of years prior to July, 1890, but there is no proof of what took place between the latter date and Relling's death. Prior to this period "he reported the drafts on the same day that he sold them." It is agreed that the estate of Relling is insolvent.

Messrs. RICHOLSON, MATSON & PEASE, for the appellants:

The delivery of the drafts by Jurgens to Relling, and the sale of the same by Relling, did not constitute a trust fund for Jurgens as *cestui que trust*. *Taylor* v. *Turner*, 87 Ill. 296.

This is not a trust fund, as it has been mingled with the other assets of the estate and its identity thereby lost. *Union National Bank* v. *Goetz*, 138 Ill. 127; *School Trustees* v. *Kirwin*, 25 id. 73; *Wilson* v. *Kirby*, 88 id. 566.

Messrs. BLANKE & CHYTRAUS, for the appellee:

Unless it appears from the record in this suit that the amount involved is not less than $1000, we submit that this court has no jurisdiction of this appeal, and the motion filed herein by appellee that the appeal be dismissed should be granted.

It has repeatedly been held by this court that it must affirmatively appear from the record that this court has jurisdiction. *McGuirk* v. *Burry*, 93 Ill. 118; *Lewis* v. *Shear*, id. 121; *Hancock* v. *Tower*, id. 150; *Piper* v. *Jacobson*, 98 id. 389.

"The party claiming the right to appeal must show that it is authorized by the law." *McGuirk* v. *Burry*, 93 Ill. 118.

The rule has been laid down by this court for such cases, that "the record must affirmatively show the amount in controversy is as much at least as $1000." *Umlauf* v. *Umlauf*, 103 Ill. 651.

The relation between the principal and agent for sale is fidu-
ciary. The proceeds belong to the former. *Baker* v. *N. Y.
Exchange Bank,* 100 N. Y. 31 ; *Blair* v. *Sennott,* 134 Ill. 78.

It is not necessary for a claimant, who desires to bring him-
self within class sixth, to trace the identical money. If there
is a trust, the claim should be allowed as of the sixth class,
although the deceased may have mingled the money with his
own. *Fitzsimmons* v. *Cassell,* 98 Ill. 332; *S. C.,* 104 id. 352;
*Tracey* v. *Hadden,* 78 id. 30.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The question in this case is, whether the claim of appellee
for $1219.81 should be preferred by being placed in the sixth
class mentioned in section 70 of the "Act in regard to the
administration of estates," or whether it should be placed in
the seventh class therein named. If it is placed in the former
class, it will be paid in full. If it is placed in the latter
class, it will share *pro rata* with the other creditors, as it is
conceded that the estate is not able to pay in full all the de-
mands against it.

Section 70 above referred to provides, that all demands
against the estate of any testator or intestate shall be divided
into classes in the manner following, to-wit: *First* — Funeral
expenses. *Second* — The widow's award, &c. *Third* — Ex-
penses of last illness, &c. *Fourth* — Debts due the common
school fund, &c. *Fifth* — Expenses of proving the will and
taking out letters and settling the estate, &c. *Sixth* — " Where
the decedent has received money in trust for any purpose, his
executor or administrator shall pay out of his estate the amount
thus received, and not accounted for." *Seventh* — All other
debts and demands, &c. (1 Starr & Cur. Ann. Stat. chap. 3,
page 220).

Just when the indebtedness of $1219.81 accrued is not
shown by the evidence. It appears, however, that such indebt-
edness arose out of the sales of drafts on foreign banks made

by Relling for appellee and as the latter's agent between July, 1890, and February 5th, 1891, the date of Relling's death. There is nothing to show at what periods between these two dates, or how long before the latter date, the proceeds of such sales came into the hands of the deceased. Nor does it appear whether the money thus realized by the sales of the drafts was kept by the deceased as a separate fund, or whether it was mingled with his own money. Under such circumstances was the money received from these sales by the deceased, as appellee's agent, money received " in trust for any purpose " within the meaning of the clause defining the sixth class of claims as above quoted?

We gave a construction to this clause in *Wilson et al.* v. *Kirby, Ex'r,* 88 Ill. 566, where it was held that the expression, " in trust for any purpose," was not intended to embrace all kinds of trusts in the broadest meaning of the term, as including factors, agents, &c., but that the word, " trust," is here used in the more restricted sense of the term, as referring to special or technical trusts, " and not those which the law implies from the contract." The same distinction is noted and pointed out in the following cases: *Weer* v. *Gand,* 88 Ill. 490; *Kirby* v. *Wilson,* 98 Ill. 240; *Pierce* v. *Shippee,* 90 Ill. 371; *Doyle* v. *Murphy,* 22 Ill. 502; *Steele* v. *Clark,* 77 Ill. 471; *Taylor* v. *Turner,* 87 Ill. 296; *Union Nat. Bank* v. *Goetz,* 138 Ill. 127; *Wetherell* v. *O'Brien,* 140 Ill. 146.

Where the deceased testator or intestate has in his life-time received money in his capacity as administrator, executor or guardian, there is no doubt that the money so received is money " in trust for any purpose " within the meaning of the statute. In such cases there is a special trust in favor of the creditors, distributees or wards. ( *Wilson* v. *Kirby, Ex'r, supra; Tracy* v. *Hadden,* 78 Ill. 30; *Fitzsimmons* v. *Cassell,* 98 Ill. 332). Prior to the passage on April 1, 1872, of the present act in regard to the administration of estates, the clause in regard to the sixth class of claims read as follows: "Where

an executor, administrator or guardian has received money as such, his executor or administrator shall pay out of his estate the amount so received and not accounted for." (Gross' Stat. of 1871, chap. 109, sec. 151, page 822). We have held that, by the change thus made in the law, and by the use of the phrase "in trust for any purpose," the legislature "intended to *extend* the class of preferred claims." (*Wilson* v. *Kirby, Ex'r, supra*). If the statute as changed extended the trusts named in the former statute, then money received by the decedent in his life-time as executor, administrator or guardian was necessarily included in money received "in trust for any purpose."

There is, therefore, no conflict between those cases, like *Tracy* v. *Hadden, supra,* and *Fitzsimmons* v. *Cassell, supra,* which hold that money received by the decedent in his capacity as executor, administrator or guardian must be paid out of his estate as a preferred claim under the sixth class, and those other cases, like *Wilson* v. *Kirby, Ex'r, supra,* and *Weer* v. *Gand, supra,* which hold that money received by the decedent as a mere agent does not belong to the preferred class of claims. Cases of the former character refer to special or technical and, in some instances, express trusts, while the latter refer to implied trusts, and trusts "where a mere confidence has been reposed or a credit given." (*Doyle* v. *Murphy, supra*).

The distinction here pointed out between the two classes of trusts is recognized and discussed in many cases decided by the Federal Courts and courts of the different States, giving a construction to certain provisions of the Bankrupt acts passed by Congress in 1841 and 1867. The Bankrupt law of 1841 provided for the discharge of "all persons * * * owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity." (*Wilson* v. *Kirby, Ex'r, supra*). The Bankrupt

law of 1867 provided that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." (Rev. Stat. U. S. sec. 5117). A definite interpretation was given to the words, "while acting in any other fiduciary capacity," as used in the act of 1841, by the Supreme Court of the United States in the leading case of *Chapman* v. *Forsyth*, 2 How. (U. S.) 202. The weight of authority is in favor of giving the same interpretation to the words, "while acting in any fiduciary character" as used in the act of 1867, although there is much conflict among the decided cases, as will be seen by reference to 2 Am. & Eng. Enc. of Law, page 722, note 3, and 7 Am. & Eng. Enc. of Law, page 957, note 5.

The definition of "fiduciary capacity" as laid down in *Chapman* v. *Forsyth*, *supra*, was adopted and applied by this Court in *Wilson* v. *Kirby*, *Ex'r*, *supra*, in order to determine the meaning of the expression "in trust for any purpose," made use of in the Illinois Statute. There cannot be any very material difference between the interests and obligations of a person who acts in a fiduciary capacity or character, and those of a person who receives or holds money in trust. Webster defines the adjective, "fiduciary," as follows: "Holding or held or founded in trust;" he defines the noun, "fiduciary," as follows: "One who holds a thing in trust for another; a trustee." Bouvier in his Law Dictionary says: "Fiduciary may be defined : in trust, in confidence."

The decisions, which point out what kinds of trusts are involved in relations of a fiduciary character, exclude factors and ordinary agents. In *Chapman* v. *Forsyth*, *supra*, it was said: "The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act. If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from

33—144 ILL.

the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, the defalcation of a public officer, executor, administrator, guardian or trustee, are not cases of implied but special trusts, and the other fiduciary capacity mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act." The doctrine here laid down, that the debt due from a factor for the proceeds of goods sold for his principal is not a fiduciary debt, has been adopted in many subsequent cases, among which are the following: *Hayman* v. *Pond*, 7 Metc. 328; *Cronan* v. *Cotting*, 104 Mass. 245; *Woodward* v. *Towne*, 127 Mass. 41; *Neal* v. *Clark*, 95 U. S. 704; *Commercial Bank* v. *Buckner*, 2 La. Ann. 1023; *Woolsey* v. *Cade*, 54 Ala. 378; *Kaufman* v. *Alexander*, 53 Tex. 562; *Scott* v. *Porter*, 93 Pa. St. 38; *Green* v. *Chilton*, 57 Miss. 598; *Palmer* v. *Hussey*, 87 N. Y. 303.

In *Woodward* v. *Towne, supra,* Mr. Chief Justice GRAY said: "The clause in the recent bankrupt act exempting &c., * * * 'debts created while acting in any fiduciary character' * * * includes only technical trusts and not trusts implied by law from contracts of agency or bailment."

In *Palmer* v. *Hussey, supra,* it was said by Mr. Justice FINCH: "It is settled * * * that the 'fiduciary capacity' intended by the Bankrupt Act relates to cases of technical trust; not merely such as the law implies from the contract, but actual and expressly constituted. * * * The affidavits and evidence show no other or different trust or fiduciary relation than such as may be said always to exist in a case of agency. In every such case there is an element of trust and confidence,

so that a breach of duty may be said to be a breach of trust, but the agent is nevertheless not a fiduciary within the meaning of the Bankrupt Act."

In *Taylor* v. *Turner, supra,* we said : "It seems to us to be a simple case of the bailment of property to a factor to sell, and his refusal to pay over the proceeds of the sale to the owner of the property, and we know not why the legal remedy of an action for money had and received is not ample." Again in *Weer* v. *Gand, supra,* we said : "Where one person employs another as an agent, loans money or sells property on credit, a confidence and trust is reposed to a greater or less extent, and yet such transactions have never been regarded by courts as falling within any recognized class of trusts."

Where, however, a person receives money as guardian, executor or administrator, his obligation to pay the same is unquestionably a fiduciary debt. (*Simpson* v. *Simpson,* 80 N. C. 332; *Crisfield* v. *The State,* 55 Md. 192).

We agree with counsel for appellee, that an agent, who receives the money of his principal, holds the same in trust, and must be held strictly to the liability of a trustee as between himself and the man for whom he acts. (*Blair* v. *Sennott,* 134 Ill. 78, and authorities cited). But the trust in the present case is one which arises out of an ordinary agency, and therefore does not come within the meaning of the statute above quoted. Natural justice and equity would seem to require, that a provision, which awards to some of the creditors of an estate a preference over all the others, should not be given any broader interpretation than the words used by the legislature actually demand. The legislative intent to enlarge the number of claims included in a preferred class should be clear and unambiguous. For the reasons thus stated, we think that the Circuit Court erred in ordering that the claim of appellee should be paid as of the sixth class, and are of the opinion that it should have been placed in the seventh class.

It is furthermore claimed by the appellee, although he has made no motion in this Court to dismiss the present appeal, that we have no jurisdiction of this appeal from the Appellate Court, upon the alleged ground that the amount involved does not affirmatively appear to be $1000.00, or over. It is said that the only amount here in dispute is the difference between what the appellee will receive, if his claim is paid as of the sixth class, and what he will receive as his *pro rata* share if he is paid as of the seventh class along with the non-preferred creditors; and that such difference may turn out to be less than $1000.00. There is nothing in the record from which it can be ascertained what the difference here referred to would be, or whether it would be less or more than $1000.00. It may as well be presumed that it would be more as that it would be less. We think the record shows that the amount involved is more than $1000.00. The judgment of the Circuit Court is that the claimant "recover of said estate said sum of $1219.81 as of the sixth class," &c., and the appeal to the Appellate Court was from this judgment. In *City of Chicago* v. *Palmer*, 93 Ill. 125, we said: "Where the judgment or decree is for money, and it is for $1000.00 or more, or where the verdict shows a finding for that sum, or more, there can be no doubt of the right to appeal, or to prosecute error, and the fact in such case appears from the record." Where a decree disposed of a fund of $2214.50 in the hands of a trustee, it was held that, as the amount disposed of by the decree exceeded $1000.00, this Court had jurisdiction although the plaintiff in error only questioned the application of $951.67 of such fund. (*Longwith* v. *Riggs*, 123 Ill. 258). The right of appeal and to sue out a writ of error is not limited, it will be observed, by the amount affected by the error assigned, but by the amount involved in the action. (*Woolley* v. *Lyon*, 115 Ill. 296; *R. R. Co.* v. *Faught*, 129 Ill. 257).

We are, therefore, of the opinion, that this Court has jurisdiction of the appeal.

The judgments of the Appellate and Circuit Courts are reversed and the cause is remanded to the latter Court for further proceedings in accordance with the views here expressed.

*Judgment reversed.*