IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# PATRICK J. MCREDMOND, JR., ET AL. v. ESTATE OF ANDREW MARIANELLI, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 93-2368-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M1999-00321-COA-R3-CV - Decided June 16, 2000**

---

Minority shareholders in a Kentucky apparel manufacturing company brought this suit in the name of the corporation. The plaintiffs claimed an agreement approved by the Board of Directors siphoned off a significant portion of the corporation's revenues to another entity in which the defendant directors had an interest. The trial court dismissed the derivative claim on summary judgment, finding that the action of the Board was not voidable under Kentucky's conflict of interest law. It also found that the directors did not violate their fiduciary duty to the corporation. We affirm the judgment on the conflict of interest issue; we reverse as to certain officers and directors on the fiduciary duty issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH and CAIN, JJ. joined.

G. Thomas Nebel, John I. Harris, III, Jeffrey T. Loy and Kenneth R. Jones, Jr., Nashville, Tennessee, for the appellants, Patrick J. McRedmond, Jr. and Monica McRedmond Terry.

Cyrus L. Booker and Charlnette A. Richard, Nashville, Tennessee, for the appellees, Estate of Andrew Marianelli, Walter Marianelli, David Manning, Edwin S. Pyle and Gordon Ferragina

John P. Branham and Kathryn E. Barnett, Nashville, Tennessee, for the appellee Milano Corporation.

## OPINION

### I.  THE MARKETING SERVICE AGREEMENT

This case arose from a Marketing Service Agreement between a long-established Kentucky apparel maker named Elk Brand Manufacturing Company, and a new entity called Milano Corporation, expressly formed to provide marketing services for Elk. In 1989, the future of the

manufacturer was uncertain because of dramatic changes in the apparel industry, and imminent changes in the management of Elk Brand.

Andrew Marianelli, Patrick McRedmond and Louis McRedmond had purchased Elk Brand in 1966. Mr. Marianelli, the majority shareholder, assumed the operation of the company. The McRedmonds served on the Board, but took no role in the day-to-day management of the company. 1n 1989, all three men were at or near retirement age. Mr. Marianelli was seeking to reduce his management role at Elk Brand, and to step down as its CEO.

Walter Marianelli, Andrew's son, was a member of Elk Brand's Board of Directors. He wished to take over the management of the company and to acquire his father's shares, but he did not have sufficient capital to purchase them. He proposed a plan to the Board which he claimed would benefit the company, while allowing him to accomplish his own goals.

The plan had two components. The first involved the formation of a new entity, called Milano Corporation, to take over marketing for Elk Brand. Milano was to be owned by certain Elk Brand managers, with Walter Marianelli taking an 80% stake. The new company would enter into a Marketing Services Agreement (MSA) with Elk Brand, whereby Milano would use its best efforts to promote the sale of Elk Brand's products, and the apparel company would agree to pay Milano 4% of its total sales up to $30 million, 6% of its sales in excess of $30 million, and 20% of any increases in Elk Brand's net profits, based upon a three-year rolling average.

A copy of the proposed MSA was distributed to the directors at a Board meeting on August 17, 1989. The proposal was discussed at the next Board meeting on September 13, 1989, after which the Board unanimously agreed to implement it and to allow the MSA to take effect retroactively to September 1, 1989. The directors present and voting were Andrew Marianelli, Walter Marianelli, Patrick McRedmond, Curtis Brasher, and Edwin Pyle.

The second component of Walter Marianelli's plan involved Milano borrowing $5 million from Third National Bank for the purpose of purchasing Elk Brand stock from his father and from other stockholders. Each stockholder received a letter from Milano, offering to purchase up to 60% of the stockholder's shares at a price of $400 per share. The letter acknowledged that the per share price was determined arbitrarily by Milano, and that it amounted to about 60% of the book value of the shares. It also identified all the present and anticipated shareholders and officers in Milano.

The loan was to be secured by a pledge of the purchased stock, and by the fees to be paid to Milano under the MSA. Because of the strength of the collateral, the bank did not require Walter Marianelli to personally guarantee the loan. He thus obtained a controlling interest in Elk Brand without a significant expenditure of, or risk to, his own capital.

In the first three years of the MSA, the sales of Elk Brand's products increased. However, Elk Brand suffered net losses of $1,857,597 during that period. At the same time Milano's net

income after taxes amounted to $3,130,429. Elk Brand's profits rebounded to record levels in 1993, 94, and 95, as did its sales volume. The company again showed losses in 1996 and 97.

On April 15, 1993, attorneys for 32 Elk Brand shareholders (most of them members of the McRedmond family) addressed a demand letter to the corporation and to seven directors of Elk Brand and Milano. The letter asserted that the operation of the MSA was financially detrimental to the minority shareholders, and demanded that the Board terminate the MSA and file suit against Milano for the return of the fees it had collected. It also recited that one of its purposes was to make the necessary demands which are a pre-requisite to be met by minority shareholders prior to filing a shareholder derivative suit under Kentucky law. Ky. Rev. Stat. § 271B.7-400.

## II. DISMISSAL AND APPEAL OF THE DERIVATIVE SUIT

The Directors decided not to respond to the demand, and on August 16, 1993, the minority shareholders brought suit for the benefit of Elk Brand against Milano and its officers and directors. Andrew Marianelli was also named. The plaintiffs claimed that the MSA was voidable as a conflict of interest transaction, because of a direct or indirect interest in the transaction possessed by Andrew and Walter Marianelli, Edwin Pyle and Curtis Brasher, and because the material facts of the transaction were not disclosed. *See* Ky. Rev. Stat. § 271B.8-310. They also claimed that the individual defendants had conspired to create and use Milano as a repository for funds unlawfully diverted from Elk Brand through the MSA.

The defendants responded by filing a motion to dismiss. They argued that the court should defer to the business judgment of the defendants on Elk Brand's Board of Directors, who had investigated the plaintiffs' claims, and determined that it was not in the best interest of Elk Brand to pursue those claims. They also contended that the plaintiffs did not fairly and adequately represent the interests of Elk Brand's minority shareholders.

An extensive hearing on the motion was conducted over three days in April 1994, in Part I of the Chancery Court of Davidson County. At the conclusion of the hearing, the chancellor directed both parties to submit proposed findings of fact and conclusions of law to the court. The court adopted the proposed findings and conclusions submitted by the defendants. The court announced that since it had to consider evidence outside the pleadings, it would treat the motion to dismiss as one for summary judgment. *See* Tenn. R. Civ. P. 12.02. On August 10, 1994, the court dismissed the suit on summary judgment.

The plaintiffs appealed to this court. In a per curiam opinion, *McRedmond v. Marianelli*, No. 01A-01-9412-CH-00594 (Tenn. Ct. App. Dec. 6, 1996, at Nashville), we reversed the trial court. We found that the chancellor had erred by granting summary judgment to defendants who had failed to meet their burden of producing uncontradicted evidence that would entitle them to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). We also found that the "business judgment rule" could not be used by the directors and controlling majority shareholders of a corporation to immunize themselves from actions to protect the rights of minority shareholders

against them, else the minority shareholders would have no recourse against the machinations of the majority. Finally we found there to be no reason to believe that the plaintiffs could not fairly represent the interests of all the Elk Brand stockholders.

## III. FURTHER PROCEEDINGS

On remand, the chancellor recused himself from further participation in this case, and the case was transferred to Part III of the Davidson County Chancery Court. The defendants renewed their motion for summary judgment. On October 2, 1998, the trial court granted partial summary judgment to the defendants, finding that the "safe harbor" provision of Kentucky conflict of interest statute was met, in that the material facts of the MSA and of the directors' interest were disclosed and known to a majority of disinterested directors.

On February 9, 1999, the trial court granted defendants' second motion for summary judgment, thereby disposing of plaintiffs' claims in their entirety. The court found that the defendants were not guilty of any misrepresentation, or of any breach of fiduciary duty to Elk Brand, and stated that the MSA was fair. On April 21, 1999, the trial court denied the plaintiffs' motion to alter or amend. The present appeal followed.

## IV. CONFLICT OF INTEREST

Since Elk Brand is a corporation organized under the laws of Kentucky, its internal corporate affairs are governed by Kentucky law. Director conflict of interest transactions are regulated by Ky. Rev. Stat. § 271B.8-310 which reads in pertinent part,

(1) A conflict of interest transaction shall be a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction shall not be voidable by the corporation solely because of the director's interest in the transaction if any one of the following is true:
　　(a) The material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;
　　(b) The material facts of the transaction and the director's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or
　　(c) The transaction was fair to the corporation.

(2) For purposes of this section, a director of the corporation shall have an indirect interest in a transaction if:
　　(a) Another entity in which he has a material financial interest or in which he is a general partner is a party to the transaction; or

(b) Another entity of which he is a director, officer, or trustee is a party to the transaction and the transaction is or should be considered by the board of directors of the corporation.

(3) For purposes of subsection (1)(a) of this section, a conflict of interest transaction shall be considered authorized, approved, or ratified if it receives the affirmative vote of a majority of the directors on the board of directors (or on the committee) who have no direct or indirect interest in the transaction, but a transaction shall not be authorized, approved, or ratified under this section by a single director. If a majority of the directors who have no direct or indirect interest in the transaction vote to authorize, approve, or ratify the transaction, a quorum shall be present for the purpose of taking action under this section. The presence of or a vote cast by, a director with a direct or indirect interest in the transaction shall not affect the validity of any action taken under subsection (1)(a) of this section if the transaction is otherwise authorized, approved, or ratified as provided in that subsection.
. . .

Walter Marianelli's interest in the transaction before us clearly meets the definition of an indirect conflict of interest under section (2) of the statute. However, the transaction is not voidable if at least two directors did not have an interest in the transaction, and were fully informed of the material facts of the transaction and of Walter Marianelli's interest in it, before voting for it. Ky. Rev. Stat. § 271B.8-310(3).

The minority shareholders concede that Patrick McRedmond Sr. was a disinterested director. However, they argue that all the other directors had an indirect interest in the MSA. They contend that in the above statute, the word "if," found in the phrase "[f]or purposes of this section, a director of the corporation shall have an indirect interest in a transaction if . . ." should be read as describing only one type of indirect interest, and not to mean "if and only if."

The plaintiffs argue that Andrew Marianelli had an indirect interest in the transaction because of his relationship with his son and because he would benefit from the purchase of his own shares; that Edwin Pyle's conflict of interest arose from his role as personal attorney to the Marianelli family; and that Curtis Brasher's indirect interest could be deduced from his long-term relationship to Andrew Marianelli, and the presence of Elk Brand profit-sharing funds in the bank where Mr. Brasher was employed.

We do not believe that we need resolve the question of whether Andrew Marianelli or Edwin Pyle possessed an indirect interest that should be recognized under the statute, because it appears to us that Curtis Brasher did not. The plaintiffs alleged (1) that Mr. Brasher was a close personal friend of Andrew Marianelli's, (2) that in their thirty years on the Board together Mr. Brasher never voted against Mr. Marianelli, and (3) Elk Brand profit-sharing funds were held in the bank where Mr. Brasher was employed.

Curtis Brasher did state that he considered Andrew Marianelli to be his friend. He also stated that as Chairman of the Board of Elk Brand from 1966 on, Mr. Brasher's practice was to thresh issues out with the other members of the Board before taking a formal vote on any proposal, in order to achieve unanimity of purpose.

We believe that if the ties of friendship or a long history of voting the same way were sufficient to constitute a conflict of interest, the actions of a great many corporate directors would likely fall under attack. Such a holding would tend to undermine the general principle that the business and affairs of a corporation are to be managed by its directors, *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. Supr. 1984). It would also be inconsistent with the non-interventionist policies that Tennessee's courts have consistently followed in regard to internal corporate matters. *Lewis v. Boyd*, 838 S.W.2d 215, 220 (Tenn. Ct. App. 1992). Finally, it is clear from the record that Elk Brand relied upon several Nashville banks for most of its banking needs, and that only relatively small sums were deposited in the First City Bank and Trust Company of Hopkinsville, Mr. Brasher's bank.

Since we have found that Mr. Brasher did not have an interest in the transaction, we must determine whether he and Patrick McRedmond Sr. were aware of the material facts of the transaction and of Walter Marianelli's interest in Milano Corporation. The affidavit of Curtis Brasher states that the issues the MSA was designed to address, and the structure of the agreement, were discussed by the Board of Directors for about a year before they voted to approve the agreement; that all directors participated in the discussions; and that all questions asked by each director were answered. Mr. Brasher states that he knew who the owners of Milano Corporation would be, and he knew that Walter Marianelli would own the majority of its shares, but that he did not know, or did not remember, exactly what percentage of the new corporation each shareholder would own.

Mr. Brasher's testimony at the 1994 hearing before Part I of the Chancery Court supports the statements in his affidavits, as do the minutes of the Board for the years 1988 and 1989. Plaintiffs attempt to raise doubts as to the truthfulness of the affidavit by pouncing on some seeming inconsistencies between testimony and affidavit, but after reading both, it does not appear to us that they have raised questions of material fact such as would preclude summary judgment for the defendants on the question of conflict of interest.

The MSA had a term of five years, with a provision for automatic annual renewals, subject to the right of either of the parties to terminate the agreement by giving timely written notice to the other. In 1994, the Board considered a resolution to renew the MSA for five years. By that time, the Board members were all familiar with the operation of the agreement, and with its effect on Elk Brand, as well with the allegations of the present suit.

The members of the Board in 1994 were Curtis Brasher, Patrick McRedmond Sr., Edwin Pyle, Andrew Marianelli, Louis McRedmond, David Manning and Walter Marianelli. Five of the seven directors voted in favor of renewal, with Louis McRedmond and Walter Marianelli abstaining. Of course both of them had an interest in the outcome, as did David Manning, who held 1% of the

stock in Milano. Once again, Patrick McRedmond Sr. and Curtis Brasher[1] voted for the resolution, thus negating any possibility that the transaction could be found voidable under the Kentucky Conflict of Interest Statute, supra.

The defendants argued that once the question of conflict of interest was resolved in their favor, no further inquiry was required, and they were automatically entitled to dismissal of the remaining claims. The chancellor correctly found that the complaint contained causes of action that could be distinguished from the conflict of interest claim. After examining the record, however, she concluded that the defendants were entitled to summary judgment on those claims also.

The appellants claim that the chancellor erred by concluding that the MSA was fair, and in ruling that the appellees had met their fiduciary duties. The appellees argue that the question of the "fairness" of the MSA was not before the trial court and is not before this court. We agree.

Ky. Rev. Stat. § 271B.8-310 permits a defendant to attempt to prove that a challenged transaction was fair to the corporation if he is unable to prove that it had been "authorized, ratified or approved" by a majority of the disinterested directors who were fully informed as to the material facts of the transaction. Since the court found that Patrick McRedmond and Curtis Brasher were both disinterested and were fully informed, it was not required to make any factual finding within the context of the Kentucky conflict of interest law regarding the fairness of the MSA transaction. Thus, the trial court's finding that the MSA was fair need not be reviewed by this court, but may be considered mere surplusage.

## V. BREACH OF FIDUCIARY DUTY

The question of fiduciary duty stands on a different footing. It is axiomatic that the officers and directors of a corporation owe a fiduciary duty to the corporation and to its shareholders. *Johns v. Caldwell*, 601 S.W.2d 37 (Tenn. Ct. App. 1980); *Acree v. E.I.F.C., Inc.*, 502 S.W.2d 43 (Ky. 1973). Controlling shareholders likewise owe a fiduciary duty to minority shareholders. *Nelms v. Weaver*, 681 S.W.2d 547, 549 (Tenn. 1984). The reason for that duty was described by this court in *Intertherm, Inc., v. Olympic Homes Systems*, 569 S.W.2d 467 (Tenn. Ct. App. 1978):

> "As a fiduciary, the officer or director [or majority shareholder] has a strong influence on how the corporation conducts its affairs, and a correspondingly strong duty not to conduct those affairs to the unfair detriment of others, such as minority shareholders or creditors, who also have legitimate interests in the corporation but lack the power of the fiduciary."

569 S.W.2d at 471.

---

[1] By this time, the profit sharing plan which had been held at Mr. Brasher's bank had been terminated, so the interest the plaintiffs claimed was in existence in 1989 did not exist at the time of the renewal of the MSA in 1994.

A fiduciary is person or entity holding the character of a trustee. *Svanoe v. Jurgens*, 33 N.E. 955 (Ill. 1893). A fiduciary duty is the duty to act primarily for another's benefit. *Haluka v. Baker*, 34 N.E.2d 68 (Ohio App. 1941). With respect to directors in a close corporation, "They are required to act in the utmost good faith, and . . . they impliedly undertake to give to the enterprise the benefit of their care and best judgment and to exercise the powers conferred solely in the interest of the corporation . . . and not for their own personal interests. 18B Am. Jur. *Corporations* § 1689. A fiduciary is not an insurer, *Young v. Phillips*, 93 S.W.2d 634 (Tenn. 1936), but is bound to exercise good faith and due diligence. *Lee v. First National Bank*, 263 S.W. 89 (Tenn. 1924); *Wallace v. Lincoln Savings Bank*, 89 Tenn. 630 (1891).

The trial judge disposed of the issue of the fiduciary duty by concluding that the MSA was "fair." Her conclusion was based on a factual finding that Elk Brand survived and profited from the MSA.

We think the facts are in dispute on that issue. Although Elk Brand faced an uncertain future in 1989, we think a finder of fact could conclude that it could have survived even without the benefit of the MSA with Milano, and that the profits transferred to Milano, with little investment on its part, could have accrued to Elk Brand.

The record shows that only two individuals were critical to Milano's success: Walter Marianelli and Gordon Ferragina. One was a director of Elk Brand and the other a former employee. In the first three years of the MSA Milano showed a net income after taxes of $3,130,429 and Elk Brand suffered $1,857,597 in losses. Elk Brand recovered and showed record profits in 1993, 1994, and 1995, but again fell into the loss column in 1996 and 1997. Milano continued to take its commissions off the top of Elk Brand's sales. The plaintiffs offered an expert opinion that the Elk Brand Board failed to properly discharge its duties in approving the MSA.

We do not conclude that all the conflicting evidence shows a breach of duty, but we do think that the evidence could support that conclusion. Therefore, summary judgment on the fiduciary duty issue was improper. *Byrd v. Hall* 847 S.W.2d 208 (Tenn. 1993).

## A. THE PARTIES

The transactions in question in this action are the 1989 MSA between Elk Brand and Milano and its renewal in 1994. Therefore, only the officers, directors, or majority shareholders at the time of the transactions had a fiduciary duty to Elk Brand or the minority shareholders. As a matter of law some of the following defendants did not have that duty and the liability of others should be restricted to the relevant time periods.

## 1. MILANO
### a. The 1989 MSA

Milano did not own any stock in Elk Brand at the time the MSA was approved in 1989. In fact, Milano's offer to purchase Elk Brand shares was contingent on approval of the MSA. At the critical point in time, therefore, Milano was simply a potential purchaser of an interest in Elk Brand.

The plaintiffs argue that this case is not <u>just</u> about approval of the MSA, but it is also about Milano receiving the excessive payments under the MSA. But we cannot find any support for the argument that a party having a contract with a corporation violates a fiduciary duty to the corporation or to the minority shareholders by continuing to receive the benefits of the contract after acquiring control of the corporation. It may have been a bad contract for Elk Brand, but Milano did not violate a duty to Elk Brand by accepting its benefits.

### b. The MSA Renewal

Milano was the majority shareholder when the Elk Brand Board renewed the MSA. It is generally held that transactions between a corporation and its majority, dominant, or controlling shareholder will be closely scrutinized by the courts with the burden of proof placed upon the shareholder when the good faith and fairness of such a transaction is challenged. *Intertherm, Inc. v. Olympic Homes Systems*, 569 S.W.2d 467, 471-2 (Tenn. Ct. App. 1978). Thus, Milano's transactions with Elk Brand are subject to close scrutiny, and under normal circumstances, it would have the burden of showing the good faith and fairness of such transactions.[2]

### 2. Gordon Ferragina

Mr. Ferragina was not an Elk Brand director in 1989 or when the MSA was renewed in 1994. Therefore, he took no action that could be classified as a breach of his fiduciary duty to Elk Brand.

### 3. David Manning

Mr. Manning became a member of the Elk Brand Board in 1992. He did not play any part in the initial adoption of the MSA in 1989. He has a one percent interest in Milano, and could be said to have an interest in the renewals after he became a member of the Board. Therefore, his action in voting for the renewal(s) should also be subjected to close scrutiny. *See Intertherm, Inc. v. Olympic Homes Systems*, supra.

## B. THE BURDEN OF PROOF

One thing remains to be said about the burden of proof on this issue. We have cited the cases placing a high burden on fiduciaries that engage in transactions with the corporation they represent.

---

[2]See Section B, The Burden of Proof.

For those directors that had no interest in the transactions, the burden may not be as great. The defendants, however, cite a Kentucky statute, Ky. Rev. Stat. § 271B.8-300 which provides that a director shall not be liable for monetary damages unless the director's failure to perform his/her duties amounts to willful misconduct or was wanton or reckless. Ky. Rev. Stat. § 271B.8-300 (5)(a) and (b). The burden of proof is placed on the person claiming the breach to prove it by clear and convincing evidence. Ky. Rev. Stat. § 271B.8-300(b).

Since the issue of the burden of proof was not decided by the court below we will not decide it here. The trial court on remand will decide who bears the burden of proof and the quantum of proof necessary to carry it.

We affirm the trial court's refusal to set aside the MSA on the ground of a conflict of interest. We affirm the dismissal of Mr. Ferragina on the claim of a breach of fiduciary duties. We reverse the trial court's dismissal of the claims based on a breach of a fiduciary duty, but we restrict the liability of the individual defendants to the time period after they became fiduciaries. We remand the case to the Chancery Court of Davidson County for further proceedings and tax the costs on appeal equally to the appellants and the appellees with the exception of Mr. Ferragina.