**Dora Andrews and Mary Lee Andrews Paris, Executrices of the Estate of James Lee Andrews, Deceased, Appellants, v. F. M. Votaw et al., Administrators de bonis non with Will Annexed of the Estate of Jesse D. Andrews, Deceased, Appellees.**

### Gen. No. 7,859.

1. AGENCY—*when relation created between payee of notes and custodian thereof.* Where pursuant to an agreement between brothers, one of whom held notes of the other payable to the holder, the instruments were placed for safe-keeping in the hands of the office manager of the maker, the transaction created the relation of principal and agent between such payee and the office manager.

2. EVIDENCE—*competency of letter from custodian of personal property to owner thereof to show purpose and character of possession.* A letter written to the owner of personal property by one having possession of such property is competent evidence to show the character and purpose of such possession.

3. EVIDENCE—*admissibility of letter containing competent and relevant matter where also containing inadmissible hearsay.* Where a letter offered in evidence, while containing relevant and competent matter, also contained matter inadmissible because hearsay, it was not error to exclude the letter as a whole.

4. EVIDENCE—*rules governing proof of defensive matter where trial without written pleadings.* The rules of evidence concerning the necessary proofs of matters of defense are the same in an action wherein no written pleadings are required as in actions where such pleadings are filed.

5. PAYMENT—*burden of proof in proceeding upon claim against estate of decedent.* In proceedings against the personal representatives of a decedent upon a claim based upon notes of the decedent, wherein the defense urged is payment, the burden of proof of such payment is upon such personal representatives in the same manner and to the same effect as if issue had been joined upon a plea of payment.

6. PAYMENT—*sufficiency of evidence to sustain defense, in proceeding upon claim against estate based upon note.* In proceedings against personal representatives of a decedent upon a claim against his estate based upon notes payable to claimants' testator, evidence that while such notes were in the possession of an employee of the maker, defendants' decedent, as agent of the payee, the signature of such maker was torn from such notes, and that in such condition they came into the possession of the defendants as personal representatives, held insufficient to support a finding that the notes had been paid by the maker thereof.

7. PAYMENT—*propriety of instruction correctly stating general presumption as to payment of note found in effects of deceased maker, in view of evidence.* An instruction correctly stating the general rule that where one has signed notes in his lifetime, and after his death they are found among his effects, a presumption that he has paid such notes arises, is nevertheless misleading and prejudicial where the evidence shows that by agreement between such maker and the payee of the notes they were committed to the custody of an employee of the maker as agent of the payee, and there remained, although accessible to the maker, until after his death, when they were taken possession of by the maker's personal representatives.

8. APPEAL AND ERROR—*when conduct of counsel in argument ground for reversal although objection thereto sustained.* Where counsel in argument made repeated and persistent efforts to bring to the attention of the jury matters outside of the record for the purpose of prejudicing the jury against the opposing party and his cause, and to arouse local prejudice against him, such conduct is ground for reversal of a judgment notwithstanding that the trial court sustained objections of opposing counsel to such remarks.

Appeal by plaintiffs from the Circuit Court of Coles county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court

Andrews v. Votaw et al., 240 Ill. App. 311.

at the April term, 1925.  Reversed and remanded.  Opinion filed March 8, 1926.  Rehearing denied April 14, 1926.

CHARLES C. LEE, CLARENCE W. HUGHES and BURNETT M. CHIPERFIELD, for appellants.

DONALD B. CRAIG; FRED H. KELLY and THOMAS D. MASTERS, for appellees.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

In this case a claim was presented and filed on March 1, 1919, in the county court of Coles county by James Lee Andrews against the estate of his brother, Jesse D. Andrews, deceased, amounting to the sum of $21,864.70. Afterwards, on March 14, 1922, James Lee Andrews, also deceased, and the appellants, Dora Andrews and Mary Lee Andrews Paris, as executrices of the estate of James Lee Andrews, were substituted as claimants. The claim is contested by the appellees, F. M. Votaw, J. W. Bledsoe and Margaret J. Andrews, who are administrators *de bonis non* of the estate of Jesse D. Andrews. Two trials were had in the county court. The first resulted in a disagreement of the jury, and upon the second trial there was a verdict and judgment in favor of the appellees, against the allowance of the claim. An appeal was thereupon prosecuted to the circuit court. A trial in the circuit court resulted in a verdict in favor of the appellees, disallowing the claim. Judgment was rendered on the verdict, and this appeal is prosecuted from the judgment.

The claim of James Lee Andrews against his brother's estate, is as follows:

"March 8, 1909—Note due one year after date
    without interest as per copy identified as
    Exhibit 'A' hereto attached..............$  352.00
"Jan. 4, 1910—Note due one year after date

without interest as per copy identified as
Exhibit 'B' hereto attached..............$2,157.41
"Jan. 1, 1912—Note due on demand without
interest as per copy identified as Exhibit
'C' hereto attached..................... 5,583.51
"Jan. 20, 1914—Note due on demand without
interest as per copy identified as Exhibit
'D' hereto attached .................... 7,721.78
"Feb. 10, 1915—Note of J. L. Andrews to F.
J. Andrews for one thousand ($1,000) Dol-
lars due one year after date with interest
at 5 per cent given for a valuable consid-
eration at the request and for the accom-
modation of Jesse D. Andrews in payment
of indebtedness due from Jesse D. Andrews
to F. J. Andrews, which note and interest
has been paid in full by J. L. Andrews, copy
thereof identified as Exhibit 'E' being here-
to attached ............................ 1,250.00
     "Plus interest from 2-10-20.
"Feb. 10, 1915—Note of J. L. Andrews to
F. J. Andrews for one thousand ($1,000)
Dollars due two years after date with in-
terest at 5 per cent given for a valuable
consideration at the request and for the ac-
commodation of Jesse D. Andrews in pay-
ment of indebtedness due from Jesse D.
Andrews to F. J. Andrews, which note and
interest has been paid in full by J. L. An-
drews, copy thereto being hereto attached,
identified as Exhibit 'F' ................ 1,250.00
     "Plus interest from 2-10-20.
"Feb. 10, 1915—Note of J. L. Andrews to
F. J. Andrews for one thousand ($1,000)
Dollars, due three years after date with in-
terest at 5 per cent given for a valuable con-
sideration at the request and for the accom-
modation of Jesse D. Andrews in payment

of indebtedness due from Jesse D. Andrews to F. J. Andrews, which note and interest has been paid in full by J. L. Andrews, copy thereof identified as Exhibit 'G,' being hereto attached ..........................$1,250.00

"Plus interest from 2-10-20.

"Feb. 10, 1915—Note of J. L. Andrews to F. J. Andrews for one thousand ($1,000) Dollars, due four years after date with interest at 5 per cent given for a valuable consideration, at the request and for the accommodation of Jesse D. Andrews in payment of indebtedness due from Jesse D. Andrews to F. J. Andrews, which note and interest has been paid in full by J. L. Andrews, copy thereof identified as Exhibit 'H,' being hereto attached............... 1,250.00

"Plus interest from 2-10-20.

"Feb. 10, 1915—Note of J. L. Andrews to F. J. Andrews for one thousand ($1,000) Dollars due five years after date with interest at 5 per cent given for a valuable consideration, at the request and for the accommodation of Jesse D. Andrews, in payment of indebtedness due from Jesse D. Andrews to F. J. Andrews, which note and interest has been paid in full by J. L. Andrews, copy thereof identified as Exhibit 'I,' being hereto attached............... 1,250.00

"Plus interest from 2-10-20."

The evidence shows that the original claimant, James Lee Andrews, and his brother, Jesse D. Andrews, and another brother, Fount J. Andrews, were all actively engaged in the lumber business for a number of years. The business of Fount J. Andrews was located at Jacksonville; that of Jesse D. Andrews at Mattoon, and James L. Andrews conducted his business at Can-

ton. In the year 1908, the three brothers came to an understanding concerning their respective business enterprises, and made an agreement to treat them as a whole, and to divide the profits, which were to be ascertained, equalized and adjusted annually between them. It was also agreed that Park Kelly, who was office manager in the business of Jesse D. Andrews, was to take a yearly account of the profits accruing in the respective yards, at Jacksonville, Mattoon and Canton, and ascertain the amount of profits so that a settlement might be had between the three brothers. And Park Kelly each year, for several years thereafter, made the necessary examinations and statements of accounts of each of the several lumber yards, and figured out the adjustments of the profits among the brothers, and in equalizing the respective profits of the business of the three lumber yards, four of the notes embraced in the claim in question were given by Jesse D. Andrews to James Lee Andrews. The claim also includes five other notes made by James Lee Andrews to Fount J. Andrews for Jesse D. Andrews, in settlement of a part of an indebtedness which Jesse D. Andrews owed Fount J. Andrews, and which afterwards were paid by James Lee Andrews to Fount J. Andrews. The three brothers in June, 1913, met at the Brevoort hotel in Chicago, and at that time the matter of placing the notes, which James Lee Andrews held against Jesse D. Andrews, in the hands of Park N. Kelly for safe-keeping was talked about, and was afterwards carried into effect. The purpose which Jesse D. Andrews had in view by this arrangement with his brother, James Lee, clearly appears from the testimony of William A. Irvine. He testified as follows: "I had a conversation in mid-summer of 1918, in Lincoln Park, Chicago, with Jesse D. Andrews, with reference to the subject matter of some notes given by Jesse D. Andrews and James Lee Andrews. Jesse D. Andrews at that time was residing temporarily at

Edgewater Beach Hotel in Chicago.   *   *   *   The conversation I am referring to, took place sometime in July, 1918.  He said his brother, Lee, at Canton, held some $20,000 worth of his notes, which he had given him in connection with the settlement of profits of the three years, in which the brothers were interested.  He said his brother was in very poor health, and had been for some time.  So bad in fact, he feared he might die, and if he did, he feared his business might pass into the hands of strangers or people unfriendly to him, and holding $20,000 of his notes, might demand payment over night.  It was quite a considerable amount of money to take out of his business on such a short notice.  He arranged for a meeting with Lee Andrews in Peoria, and prevailed on him at that time to send those notes to Park Kelly for safe-keeping.''   At the time of the conversation with Irvine referred to, the notes in question were in the hands of Park N. Kelly. The evidence shows that the notes had been sent by James Lee to Jesse D. Andrews, about June 5, 1913, inclosed in the following letter:

''Mr. J. D. Andrews,
     ''Mattoon, Ill.
''Dear Brother:
     ''Enclosed find the three notes which you will please do with as we talked about.
     ''I hope that you reached home on time and had a comfortable trip as we did.  ·
     ''Pauline had a laundry bill which I paid.  Am mentioning this so that she will have no uneasiness about it.
                         ''Your fond brother,
                              ''J. L. ANDREWS.''

Jesse D. Andrews, when he received the notes from his brother, James Lee, at once turned them over to Park N. Kelly.  Park Kelly testified in reference to

his taking possession of the notes as follows: "Jesse D. Andrews gave them to me one morning. He called me into his office and said, 'Here are some notes of Lee's. Put them away in the vault.' The notes were those identified as Plaintiff's Exhibits 3, 5 and 8. This conversation was in June, 1913. At the same time he gave me a letter, that letter identified as Plaintiff's Exhibit 12, I placed in the vault in the office with the notes. This was the office of Jesse D. Andrews. I placed the notes and the letter in a pasteboard document box on a shelf on the south side of the vault." Park Kelly also testified that afterwards in February, 1915, he also received the $7,721.78 note made by Jesse D. to James Lee Andrews, which constitutes a part of the claim in question, and that Jesse D. Andrews told him to put this note in the vault with the other notes, which he did. These notes remained in the custody of Park N. Kelly, in which he had placed them, in the vault, from the time that Park Kelly took possession of them until the death of Jesse D. Andrews, and they were never returned by Kelly to the possession of Jesse D. Andrews at any time, but Jesse D. Andrews had access to them, as he had to all papers which were kept in the vault. In the fall of 1917 at the request of James Lee Andrews, Park Kelly made copies of the four notes and sent the copies to James Lee Andrews, who had requested the copies. The notes at that time were in the same condition that they were at the time they were placed in the package; but in December, 1918, Kelly noticed that the signatures of Jesse D. Andrews had been torn off. These facts appear from the evidence adduced for the claimants on trial and are not controverted by any evidence offered on the part of the appellees. The claimants contend that the verdict and judgment is contrary to the evidence, also that the court excluded competent evidence, and that there are errors in the instructions. The claimants insist that the following

letter, which was transmitted by Park N. Kelly to James Lee Andrews in August, 1917, in reference to the notes held by Kelly, which was excluded, should have been admitted for the consideration of the jury. The letter offered is as follows:

"Mattoon, Ill., Aug. 9, 1917.

"Mr. J. L. Andrews,
    "Canton, Ill.        ∘
"Dear Sir:

"I have in my possession certain valuable papers for safe-keeping which are your property and can be delivered to you at any time on your request.

"P. N. KELLY."

The letter referred to is a declaration by a person in' possession of personal property, and is competent evidence to show the character of his possession, the purpose of it, and in this case tended to show that Kelly was acting in conformity with the purpose for which he had received the property, and was carrying into effect such purpose. The declarations of persons in possession of personal property explanatory of the nature and character of their possessions are competent. 22 Corpus Juris, sec. 280, p. 277. It is well settled that the existence and extent of a claim of one in possession of personal property as to the ownership thereof, or as to the rights therein, may be shown by his relevant declaration, although they operate in the declarant's own favor. 22 Corpus Juris, sec. 279, p. 276; *Martin v. Martin,* 174 Ill. 371; *Amick v. Young,* 69 Ill. 542; *Whitaker v. Wheeler,* 44 Ill. 440; *Rigg v. Cook,* 4 Gilm. 336.

This evidence tended to show that Kelly held the notes in question as custodian for James Lee Andrews, in accordance with the arrangement which had been made by the two brothers in reference to the possession of the notes, and for their safe-keeping, and that

Kelly had accepted the responsibility of acting in that capacity. The relation which was created by the arrangement made by the brothers concerning the notes was that of agency. An agent is one who undertakes to manage some affairs to be transacted for another by his authority on account of the latter, who is called the principal, and to render an account. Bouvier Law Dictionary, vol. 1, p. 84; *Equity Produce & Stock Exchange v. Keyes,* 67 Ill. App. 460. And where one puts property in the hands of another to keep or manage, the relation is that of principal and agent. 2 Corpus Juris, sec. 11, p. 425; *Weer v. Gand,* 88 Ill. 490; *Mabley v. Irwin,* 16 Ill. App. 362; *Hartley v. Phillips,* 198 Pa. 9. The authority to act as agent is complete where permission to do a thing is given. There need be no direction or request on the part of the principal. *Fay & Bryant v. Richmond,* 43 Vt. 25. Nor is it essential "that an agent should be appointed directly by the principal, but the appointment may be made through another, * * . * or the relation may arise out of an agreement to employ the agent of another, such person then becoming the agent of the first party." 2 Corpus Juris, sec. 30, p. 435.

In accordance with the principles emphasized in the authorities cited, we conclude that the latter was competent evidence under the issues, and should have been admitted.

Appellants also offered to put in evidence another letter written by Park N. Kelly to James Lee Andrews, about January 28, 1919, to which the court also sustained an objection. This letter is as follows:

"Mattoon, Ill., Jan. 28th, 1919.
"Mr. J. L. Andrews, Canton, Ill.
"Friend Lee:
"When in Chicago, you requested me to look up and send you some notes which you had placed in trust

in the hands of J. D. Andrews.   In looking up same
I find four notes as follows:

"March 8, 1909...............$  352.00
"January 4, 1910.............  2,157.41
"January 1, 1912.............  5,383.51
"January 20, 1914............  7,721.78

"These notes were at one time signed by J. D. An-
drews, but the signature has been torn from each note.
 "I took these notes up to Mr. Craig and told him
that you wanted them but they were of no value in this
shape.   He asked me if I knew who removed the signa-
tures and I said I did not.   *   *   *   You boys and
Mr. Craig had two or three meetings in Chicago in
the early part of 1914.   *   *   *   I was not present at
any of these meetings.   *   *   *   Mr. Craig wanted
to go and talk to J. D. about it but I told him he was
gone and we would have to wait until some future
time."

The record discloses that the letter was offered as
a whole, and that it contains certain hearsay state-
ments in a conversation with Judge Craig, and was
therefore properly excluded.

We find no error in the rulings of the court con-
cerning the books of account of James Lee Andrews;
nor in excluding the books of account of the Canton
National Bank.

The contention of the claimants that the verdict is
contrary to the evidence presents this legal situation.

There are no written pleadings required in this pro-
ceeding, but the rules of evidence, concerning the
necessary proofs of matters of defense, are the same
as if written pleadings had been filed.   The defense
urged by the appellees, against the right of recovery
on the notes in question, is payment, an affirmative
defense.   The burden of proving payment rested upon
the appellees in the same manner and to the same
effect as if issue had been joined upon a plea of pay-

ment. *Schallman v. The Royal Ins. Co.*, 94 Ill. App. 364; *Vail v. North American Union*, 191 Ill. App. 297; *Weber v. American Posting Service*, 197 Ill. App. 500; *Supreme Tent Knights of Maccabees of the World v. Stensland*, 105 Ill. App. 267, and 206 Ill. 124. The appellees did not adduce any evidence showing or tending to show that the notes in question had been paid by Jesse D. Andrews. The record discloses but one fact, namely, that the signatures of Jesse D. Andrews had been torn off these notes, which is shown by the evidence for the claimants, and could be regarded as a circumstance tending to show payment; but the fact alone that the signatures have been torn off the notes while they were in custody of Park N. Kelly cannot be regarded as sufficient proof of the payment of the notes. The verdict of the jury which in effect found that the notes in question had been paid by Jesse D. Andrews was therefore manifestly against the weight of the evidence.

We find that the instructions are substantially correct statements of the general rule concerning the legal presumption of payment which arises where notes are found in the possession of a maker at the time of his death. The general rule, however, when viewed in the light of the facts proven, was misleading. The rule is stated in the first instruction as follows:

"1. The court instructs the jury that the law is that where a person has signed a promissory note or notes and such note or notes in the lifetime of the person signing them, or after his death, is or are found in the possession or among the effects of the maker or signer thereof, a legal presumption arises that said note or notes has or have been paid or settled, and unless that presumption is rebutted by the person seeking to recover upon the note or notes, then the presumption prevails that such note or notes were paid."

The jury could, and probably did, infer from this instruction that if the notes in question at the time of the filing of the claim against the estate of Jesse D. Andrews, deceased, were in the possession of the appellees among the other effects of Jesse D. Andrews, that a legal presumption of payment would arise, even though the proof in the case would show they were in the possession of Park N. Kelly as custodian for James Lee Andrews at the time of the death of Jesse D. Andrews, in which case the presumption of payment would not arise, even though the appellees may afterwards have taken possession of the notes as a part of the effects of Jesse D. Andrews, deceased.

For the errors indicated, the judgment must be reversed, but the record discloses another ground for the reversal of the judgment. During the arguments, the counsel for appellees made repeated and persistent efforts to bring matters outside of the record to the attention of the jury, to prejudice the jury against the claimants, and their cause of action, and to arouse whatever local prejudice there might have existed in the minds of the jury against the claimants, who were from another county. Counsel also sought to emphasize the fact that the amount of the claim which the claimants were seeking to recover was a lot of money which they wanted to take away from Coles county to Fulton county. The court very properly sustained objections to these remarks of counsel, which were reprehensible and unwarranted. The sustaining of the objections, however, could not remove from the minds of the jury the prejudice which may have been engendered thereby; nor did it remove the injury suffered by the claimants to the right of a fair and impartial trial. Judgment is reversed and the cause remanded.

*Reversed and remanded.*