John R. Jones, Plaintiff in Error, v. Charles A. Taylor et al., Defendants in Error.

Gen. No. 8,443.

404

Opinion filed April 14, 1931.

PETER MURPHY, for plaintiff in error.

HAROLD F. TRAPP and ROBERT R. HUMPHREY, for defendants in error.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

In this case we substantially adopt the statement made by defendant in error, to which no criticism has been presented to this court. The facts are somewhat complicated and for convenience the statement has been subdivided in an effort to make the facts clear.

### The Bill and Cross-bill

When Jones filed his original bill for partition, the 100 acres subject to the mortgage was owned by himself and defendant in error Dr. Charles B. Taylor. Dr. Taylor filed his answer and cross-bill setting up facts to exonerate his 50 acres as against Jones. Subsequently and shortly before he became incapacitated, Dr. Taylor conveyed all his interest in the land to his daughter, Georgie Belle Humphrey, by warranty deed. Georgie Belle Humphrey filed her intervening petition and became party defendant. Thereafter she filed her answer and cross-bill setting up her title, and setting up facts to exonerate her land as against Jones, and prayed partition on her cross-bill. Except as to the equities of the burden of the mortgage, the bill and the cross-bill are in agreement as to interests of tenants in common in said farm.

## The Mortgage

In June, 1917, one George O. Taylor owned the Ferguson farm of 200 acres. Then he deeded the undivided half of his farm to his two brothers, James C. Taylor and Zachariah T. Taylor, Sr., of Elkhart, Illinois. These two brothers then executed a mortgage on their undivided 100 acres to said George O. Taylor to secure 12 notes, each for $1,000, all payable to George O. Taylor, one due in 1918 and one in each succeeding year up to and including 1929.

## The Mortgage Notes

All parties concede the first two notes in 1918 and 1919 were paid and canceled in the lifetime of George O. Taylor. The next five notes were produced in court by Georgie Belle Humphrey from the papers of her father, Dr. Charles B. Taylor, who was incapacitated prior to the taking of the evidence in the partition suit. Mrs. Humphrey is not, of course, trying to collect them, but is only relying upon them as part of the evidence which exonerates her 50 acres as against the 50 acres of Jones.

The last five of said notes, due in 1925, 1926, 1927, 1928 and 1929, are the notes which must be paid in cash and which the circuit court ordered charged primarily on the 50 acres owned by plaintiff in error, Jones. These five notes were conveyed by George O. Taylor to his nephew Charles Allen Taylor as trustee for Georgie Artis. The trustee sold one of the five notes, which same is now held by the Elkhart State Bank. The trustee still holds four of the notes.

## Descent of Title

George O. Taylor died in November, 1919, and by his will gave his remaining 100 acres in the Ferguson farm to his widow, Augusta H. Taylor for life,

with remainder in fee at her death in four equal shares, each share being one-eighth of the total farm or approximately 25 acres of land; one share (25 acres) to his brother James C. Taylor; one share (25 acres) to his brother Zachariah T. Taylor, Sr.; one share (25 acres) to his brother Charles B. Taylor; one share (25 acres) to be equally divided among the children of a deceased brother, Cheslea Q. Taylor, i. e., Charles Allen Taylor, Edna E. Taylor, Perle Sherbondy. Perle Sherbondy deeded her share in remainder to her brother and sister, Charles Allen Taylor and Edna E. Taylor.

James C. Taylor died May 31, 1922, leaving a will which never became effective because all his land was sold to pay his debts. At the time of his death he owned the 50 acres subject to the mortgage and the remainder in 25 acres subject to the life estate of Augusta H. Taylor, or a total of three-eighths of said farm, which was all sold by his executors to pay debts and all bought by plaintiff in error Jones at the executor's sale.

Zachariah T. Taylor, Sr., sold his 50 acres, which was subject to the mortgage, to his brother Dr. Charles B. Taylor for $10,000 on January 29, 1923. Dr. Charles B. Taylor later made a warranty deed to his daughter Georgie Belle Humphrey, conveying to her 50 acres of the Ferguson farm, subject to mortgage, and 25 acres which had come to him under his brother George O. Taylor's will.

Zachariah T. Taylor, Sr., died intestate March 21, 1923, still owning the 25 acres of the Ferguson farm devised to him by his brother George O. Taylor, and then subject to the life estate of Augusta H. Taylor. His administrators sold all his real estate to pay his debts. John R. Jones, plaintiff in error, bought the 25 acres in the Ferguson farm at the administrator's sale.

After this suit was started and in the year 1927, Augusta H. Taylor, who held the life estate in half the Ferguson farm, died and all remainders are now vested in possession.

### Present Owners of the Land

For the sake of convenience and clearness we will assume the Ferguson farm to be exactly 200 acres and on this assumption said land is now owned as follows:

John R. Jones, original complainant, owns: 50 acres free of mortgage; 50 acres subject to mortgage.

Georgie Belle Humphrey, cross complainant, owns: 25 acres free of mortgage; 50 acres subject to mortgage but claimed to be exonerated as against Jones; plaintiff in error.

Charles Allen Taylor and Edna E. Taylor together own: 25 acres free of mortgage.

### The Issue in the Case

As above stated, the trustee for Georgie Artis and the Elkhart State Bank together hold $5,000 mortgage debt and interest, for which 100 acres of the Ferguson farm is security, said 100 acres being owned in equal shares by said plaintiff in error, Jones, and said defendant Humphrey. The circuit court found that as between Jones and Humphrey the 50 acres of Jones was primary security for the notes held by the trustee for Georgie Artis and the Elkhart State Bank, totaling $5,000 and interest, but plaintiff in error contends that burden thereof should fall equally upon himself and Mrs. Humphrey. The solution of the question must be sought in the circumstances surrounding and the nature of the conveyances respectively by which said Jones and Mrs. Humphrey obtained title to the mortgaged premises.

## Jones Assumed the $5,000 Mortgage

The 50 acres which Jones holds subject to the mortgage was purchased by him at the executor's sale to pay debts held at Elkhart in June, 1924. There were 19 separate tracts of real estate described in the decree for sale to pay debts. The 50 acres described as "Item No. Eighteen" is the 50 acres now owned by plaintiff in error, subject to the mortgage. The decree for sale to pay debts sets out the interests of all parties in this 50-acre tract designated as Item No. Eighteen, and provides among other things: "That the unpaid balance of the principal of said mortgage is now equal to the sum of $10,000, with interest thereon at the rate of five per cent per annum from the first day of June, 1923; . . . that the said undivided 50 acres above described as property of said James C. Taylor as 'Item No. Eighteen' is therefore subject to one-half the burden of the said last described mortgage indebtedness, or the principal sum of $5,000, with interest at the rate of five per cent since the first day of June, A. D. 1923." The decree of sale further sets out that the 50 acres was worth on an average of $200 per acre. The court also orders the executors to sell all of the real estate, or so much thereof as might be necessary, to pay the debts, "said lands being sold subject to the mortgage indebtedness hereinabove set forth as encumbering the various tracts respectively as aforesaid." And the decree for sale reads: "And it is further ordered, adjudged and decreed by the court that in no case shall any item of real estate offered for sale under this decree by said executors be sold by said executors for less than two-thirds of the valuation of said particular piece of real estate, as hereinabove found by this decree of this court." Also there appears the terms of sale in the particular decree, showing that possession in each case was to be

delivered to purchaser subject to the rights of mortgagees as set forth in the decree.

### Jones' Deed Made Subject to $5,000 Mortgage

Under this decree the sale was held on June 11, 1924, at Elkhart and plaintiff in error, Jones, was present and heard the attorney for executors "announce the terms of the sale subject to half the burden of a mortgage of $10,000." Thereafter plaintiff in error bid in the 50 acres at $1,492.35, as shown by the report of sale made in July, 1924, which was confirmed. Jones then took a deed from the executors. This deed reads: "This conveyance is also subject to one-half the burden of an unpaid mortgage, being originally made of date June 19, A. D. 1917, by James C. Taylor and Zachariah T. Taylor, Sr., to George O. Taylor in the principal sum of $12,000, recorded in Book 49 of Mortgages, at page 166 of the records of the office of the recorder of Logan county, Illinois, said unpaid balance of said mortgage being the principal sum of $10,000 with interest thereon at 5 per cent per annum from and after the 1st day of June, A. D. 1923."

Jones paid the sum of $1,492.35 for the 50 acres, or a little less than $30 per acre cash, the balance of the purchase price being the assumption of $100 per acre mortgage debt with interest, on which assumption of mortgage debt, the land brought approximately $133.33 per acre, being two-thirds of the $200 an acre value found and decreed by the probate court and fixed as the minimum sale price. After this plaintiff in error assumed the indebtedness and paid two years' interest on each of the five notes now held by the trustee for Georgie Artis and the Elkhart State Bank. It is to be noted further that the report of said sale gives the terms of the sale, saying "That the said sale was advertised, announced, made and held upon the following terms, to wit: All sales to be made subject to rights of mortgagees."

Humphrey's Fifty Acres Claimed to be Exonerated

Georgie Belle Humphrey obtained her 50 acres by the warranty deed of her father, Dr. Charles B. Taylor. Dr. Taylor bought the 50 acres from his brother Zachariah T. Taylor, Sr., January 29, 1923. At the time of this sale Zachariah T. Taylor, Sr., gave his brother Dr. Charles B. Taylor a signed memorandum (written entirely in his own handwriting), which is as follows: "Recd of Chals B. Taylor Ten Thousand Dollars as payment for Fifty (50) acres of land the ¼ one fourth Interest in the Ferguson Farm Sec. 32 & 33 Elkhart Twp. Z. T. Taylor agrees to meet the payments of bal of One half of Mortgage Remaining on paid.

Jan. 29th, '23.                    Z. T. Taylor."

Dr. Taylor paid for the 50 acres by a check for $8,950 drawn on the Lincoln National Bank of Lincoln, Illinois. The other $150 necessary to make the $10,000-purchase price is shown to have been a check of a third party. In brief, Dr. Charles B. Taylor paid $10,000 for the 50 acres and the written agreement from his brother Zachariah T. Taylor, Sr., to exonerate the 50 acres purchased from all liability under the mortgage. Later, Zachariah T. Taylor, Sr., told his brother Charles B. Taylor that he had the papers that by producing would clear this part of the mortgage and he said these papers were in a certain drawer in the safe. Soon afterwards Zachariah T. Taylor, Sr., was taken sick and died March 21, 1923. Thereafter Dr. Charles B. Taylor showed the agreement to exonerate the land to the son of Zachariah T. Taylor, Sr., one Zachariah T. Taylor, Jr., whose testimony appears in this case. Dr. Taylor asked his nephew to look in the safe where his brother had said the mortgage papers would be. The nephew did so and found the mortgage and five $1,000-notes, which are marked "paid" and have certain indorsements of interest written on the back. These notes Zachariah T. Taylor,

Jr. (who was one of the administrators of his father's estate) then and there gave to Dr. Taylor and they were found among the papers of Dr. Taylor after his incapacity and produced in open court by his daughter, Georgie Belle Humphrey.

The master in chancery to whom the cause was referred, found that there was but $5,000 principal indebtedness remaining due under said mortgage, and that the interests of the owners of the mortgaged land were primarily liable for said amount, and that the cross-bill of Charles B. Taylor and the cross-bill of Georgie Belle Humphrey both should be dismissed. Objections were filed by Georgie Belle Humphrey to the master's findings, which objections were made exceptions upon the hearing before the court and were sustained, and a decree of partition entered finding and adjudging, among other things, that plaintiff in error owned an undivided one-fourth of the lands first above described subject to being the primary security for all of the principal and interest represented by said four mortgage notes held and owned by said Charles A. Taylor, trustee for Georgie Artis, and one mortgage note held and owned by said Elkhart State Bank of Elkhart, Illinois, and that plaintiff in error owns another one-fourth, in fee simple, free of incumbrance; that Georgie Belle Humphrey owns an undivided one-fourth, subject to being secondarily liable for the principal and interest of said five notes, and that said Georgie Belle Humphrey owns an undivided one-eighth in said real estate in fee simple, free of incumbrance; that said Edna E. Taylor and Charles A. Taylor each own an undivided one-sixteenth of said real estate, free and clear of incumbrance, to review which decree the writ of error in this case has been sued out.

It is contended that the memorandum signed by Z. T. Taylor represented only a personal obligation and that the said Charles B. Taylor so interpreted the mem-

orandum and filed a claim against his brother Zachariah T. Taylor's estate for the amount of said notes, and that the same was allowed and paid to the extent of $1,270.76, the estate being insolvent, and the claimant Charles B. Taylor receiving his full percentage of the assets upon the claims paid.

It is further contended that said James C. Taylor, one of the makers of said notes, was executor of the will of his brother George O. Taylor, and as such executor administered the estate of George O. Taylor. None of said notes appeared in the inventory of the assets of the estate of James C. Taylor. The estate of George O. Taylor was administered in Louisiana, but it is not denied but that plaintiff in error purchased his portion of the lands in the executor's sale of lands in the estate of James C. Taylor, deceased, and subject to a mortgage of $10,000 upon the 100 acres. There is nothing to show that the estate of George O. Taylor, deceased, was the owner of these notes at the time of his decease. There is nothing in this record to show that the notes had ever been paid. Neither do the proofs show how or in what manner the notes came into the possession of Zachariah T. Taylor, Sr., in his lifetime, but his possession of the unindorsed notes was prima facie evidence of his ownership of the notes. In this case, the notes being found in the possession of a part owner of the mortgaged premises, constituted a sufficient reason for keeping the notes alive, although a full settlement had been made with the former owner of the notes. One of two comakers of mortgage notes may be the sole owner of such notes and keep them alive as part of a funded debt, as possession works no merger or extinguishment. (*Walker v. Chicago M. & N. R. Co.,* 277 Ill. 451; *Kipp v. McChesney,* 66 Ill. 460; *Flagg v. Geltmacher,* 98 Ill. 293.) Equity will keep a mortgage and mortgage notes alive even against the intent of the mortgagee and his cancellation of the notes, if neces-

sary to protect a holder. (*Moffet v. Farwell*, 222 Ill. 543; *Richardson v. Hockenhull*, 85 Ill. 124.) Neither will the law presume a fraud on the part of James C. Taylor towards the widow or estate of George O. Taylor, deceased, nor on the part of Zachariah T. Taylor, Sr., towards his brother Charles B. Taylor. The law never presumes a fraud. (*McKennan v. Mickelberry*, 242 Ill. 117, 134; *Speck v. Pullman Palace Car Co.*, 121 Ill. 33, 54.)

It is strongly contended by plaintiff in error that the claim filed by Charles B. Taylor against the estate of Zachariah T. Taylor, Sr., and a partial recovery thereon, is strong proof that the notes in question were paid. A careful reading of the receipt given by Z. T. Taylor to his brother Charles B. Taylor shows that it is not a covenant against incumbrances, but an undertaking to meet the notes in his brother's behalf as they became due. It shows the intent on the part of Zachariah T. Taylor, Sr., to keep alive the notes and mortgage securing them. Zachariah T. Taylor, Sr., had died and had not turned over the notes. Charles B. Taylor may have believed that his only recourse was to file a claim against the estate. Any advantage accruing to Charles B. Taylor from this action would not inure to the benefit of plaintiff in error, but to the creditors of the estate of Zachariah T. Taylor, deceased. It is no proof that the notes had been canceled. Zachariah T. Taylor conveyed his interest in these lands by a good and sufficient warranty deed to Charles B. Taylor, and Charles B. Taylor and his wife, by a similar warranty deed, conveyed the lands to defendant in error. These deeds, under the statute, were covenants against incumbrances and run with the land for the benefit of remote grantees. (*Richard v. Bent*, 59 Ill. 38; *Dalton v. Taliaferro*, 101 Ill. App. 592; Cahill's St. ch. 30, ¶ 9.) This entitled defendant in error to the possession of the notes in question.

On the doctrine of comparative equities in this case, it is much stronger for defendant in error than for plaintiff in error. Jones, plaintiff in error, purchased specifically subject to the mortgage, and the amount of the mortgage debt was deducted from the sale price. As to the defendant in error the lands came to her by conveyances, free of the mortgage debt, and her father had paid the full price of the lands covenanted to be free of the lien.

Considerable objection is made to the testimony of Zachariah T. Taylor, Jr., as to statements made by his father concerning the notes while said notes were in the father's possession. This testimony was competent. (*Martin v. Martin,* 174 Ill. 371; *Andrews v. Votaw,* 240 Ill. App. 311, 319.) In *Andrews v. Votaw, supra,* this court held: "The letter referred to is a declaration by a person in possession of personal property, and is competent evidence to show the character of his possession, the purpose of it, and in this case tended to show that Kelly was acting in conformity with the purpose for which he had received the property, and was carrying into effect such purpose. The declarations of persons in possession of personal property explanatory of the nature and character of their possessions are competent. 22 Corpus Juris, sec. 280, p. 277. It is well settled that the existence and extent of a claim of one in possession of personal property as to the ownership thereof, or as to the rights therein, may be shown by his relevant declaration, although they operate in the declarant's own favor. 22 Corpus Juris, sec. 279, p. 276; *Martin v. Martin,* 174 Ill. 371; *Amick v. Young,* 69 Ill. 542; *Whitaker v. Wheeler,* 44 Ill. 440; *Rigg v. Cook,* 4 Gilm. 336."

Some other matters were argued in this case to which we do not deem it necessary to give further attention. It is mainly contended by plaintiff in error

. that the decree is against the manifest weight of the testimony. In this contention we cannot agree with plaintiff in error. Whatever property transactions there may have been in the Taylor family and however the transfer and ownership of these notes may have occurred, no fraud is shown and none can be presumed and in no event have plaintiff in error's rights been affected in any manner whatsoever.

A cross error is presented by defendant in error that the decree of partition should have been granted upon the cross-bill and not upon the original bill. The cross-bill did set out the rights and equities of the parties to this suit correctly, in which respect the original bill was defective and accountable for the burden of this litigation. Defendant in error's cross error should be sustained.

Accordingly, the decree of the circuit court of Logan county is reversed and the cause remanded with directions to the circuit court of Logan county to enter a decree upon the cross-bill. In all other respects the decree of that court is affirmed.

*Reversed and remanded with directions to enter decree.*