## General Accident, Fire and Life Assurance Corporation v. Lee.

(Decided September 24, 1915.)

### Appeal from McCracken Circuit Court.

1. Insurance—Accident—Cancellation of Policy—Notice—Sufficiency.—Under the provision of a policy, authorizing its cancellation by the company by written notice delivered to the insured or mailed to his last address as shown by the records of the corporation, a letter requesting the insured to remit the premium or return the policy for cancellation is not a sufficient notice of cancellation. The notice must show unequivocally that the policy has been cancelled.

2. Principal and Agent—Authority of Agent—Evidence.—In an action on an accident policy, evidence of the agent's authority to collect the premiums held sufficient to take the case to the jury and sustain its finding in favor of the insured.

J. D. MOCQUOT for appellant.

CAMPBELL & CAMPBELL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Affirming.

This suit by plaintiff, Charles C. Lee, against General Accident, Fire and Life Assurance Corporation, Limited, resulted in a verdict and judgment in favor of plaintiff for $7,500.00. Defendant appeals.

The company presented two defenses: (1) That the premium was never paid to it or to an agent authorized to receive it; (2) the policy was cancelled before the accident and notice thereof mailed to the last address of plaintiff, as shown by the records of the corporation. These allegations of the answer were denied by reply, and plaintiff further pleaded an extension of credit by an au-

thorized agent of the company until after the Christmas holidays, the acceptance of cash and a note on January 8th, 1914, in settlement of the premium on the policy by an authorized agent and the estoppel of the company to claim that the policy was cancelled.

The facts are as follows: Plaintiff was engaged in the wall paper, jewelry and picture frame business in the City of Paducah. He frequently made purchases from the Robert Graves Company, wholesale dealers in wall paper. On October 21st, 1913, W. C. Ewart, a representative of the Robert Graves Company, called on plaintiff for the purpose of selling him some wall paper. While plaintiff and his wife were inspecting the samples of wall paper, Ewart suggested that he had a form of accident insurance which he advised plaintiff to take. At the same time he produced a blank policy, which he exhibited to plaintiff. Plaintiff stated that he did not care to take the policy, as he was not in position to pay the premium. According to plaintiff's evidence, Ewart insisted on his taking the policy and agreed to extend the time for paying the premium until after the Christmas holidays. With this understanding the plaintiff agreed to take the policy. Ewart then made out an application, which plaintiff signed and Ewart forwarded to the company. A few days thereafter plaintiff received from the general agent of the company the policy of insurance on which this suit is based. He also received a statement from the company showing the amount of premium due. Plaintiff, however, did not remit the premium. On January 8th, 1914, Ewart called on plaintiff and stated that he had been instructed by the general agent either to collect the premium due on the policy or take the policy up. At the same time he presented to plaintiff a statement of his account. On the same occasion he stated that he, himself, had paid $20.00 on the policy, and that if plaintiff would pay him back his $20.00 and give his note for the balance that would settle the account. Thereupon, plaintiff paid the $20.00 in cash and executed his note, payable in ninety days to the order of F. G. Huntington, the general agent. Ewart took the money and note and told plaintiff that he was going to Cincinnati and turn them in to the company, and that if anything happened to plaintiff, plaintiff could recover on the policy. On January 24th, 1914, plaintiff, while a passenger on a regular passenger train, received an injury to his eye, which completely destroyed the sight thereof and necessitated its removal. On January 26th,

1914, plaintiff's wife addressed a letter to Ewart, in care of the company at Cincinnati, Ohio, informing him of the accident sustained by plaintiff and enclosing a cashier's check for $20.00, payable to the order of W. C. Ewart, in settlement of the ninety-day note. On January 29th, 1914, Ewart signed a letter, which was dictated by the general agent, denying liability on the policy and claiming the policy had been cancelled on December 23rd, 1913, for non-payment of premium, and further claiming that a letter had been written to plaintiff on December 18th, 1913, informing him that unless he remitted the premium the policy would be cancelled. Enclosed with this letter were the ninety-day note and a check of W. C. Ewart for $20.00 payable to plaintiff.

According to the evidence for defendant, Ewart had been a former agent of the company, but at the time of the transaction, on which this action is based, he was a traveling salesman for the Robert Graves Company. At that time Ewart was not an agent or an employe of the company, but was permitted to solicit insurance on a mere brokerage basis, as a side line. The applications which he took were to be sent to the Cincinnati office and there approved. Ewart further says that in the payment of the premium credit was to be extended for only sixty days. He also says that when he called a second time and received the cash and note he did so with the understanding that he would make an effort to have the policy renewed. The general agent testifies that he dictated and signed the following letter:

"December Eighteenth,
"Nineteen thirteen.

"Mr. C. C. Lee,
    "Paducah, Ky.

"Dear Sir:

"Referring to your accident policy No. 402641, kindly forward remittance covering the premium, $40.00, or return the policy for cancellation as the matter has been outstanding sixty days and we must make our report to the company.

"Awaiting your prompt reply, I remain,
            "Yours very truly."

This letter, it is claimed, was mailed to the last known address of the plaintiff, though no one with the knowledge of this alleged fact testifies thereto. Plaintiff denies hav-

ing received it. There is further evidence to the effect that on December 23rd, 1913, the general agent reported the cancellation of the policy and took credit for the premium in his settlement with the home office. It is further shown that Ewart did not turn over to the company the cash or the note which he had received, or communicate to the general agent the fact that he had the cash and note until after the accident occurred. The policy sued on contains the following provision:

"The corporation may cancel this policy at any time, without prejudice to the rights of the insured in or to any claim arising on account of a disability commencing prior to the date on which the cancellation takes effect, by written notice delivered to the insured or mailed to his last address as shown by the records of the corporation, with the corporation's check for the unearned part, if any, of the premium paid."

In its instructions the court told the jury, in substance, to find for the plaintiff in the sum of $7,500.00, unless they believed from the evidence that previous to the time plaintiff received the injury complained of defendant had cancelled the policy sued on for non-payment of premium, and had mailed to plaintiff's last address, as shown by the records of the company, notice of said cancellation, in which event they should find for the defendant, unless they further believed from the evidence that after said policy had been cancelled by the defendant, if it was so cancelled, defendant, by its authorized agent, accepted $20.00 in cash and plaintiff's note for the balance due on the agreed premium and agreed to reinstate said policy in the defendant company, in which event, and if they so believed, they should find for the plaintiff.

The evidence shows that it was the custom of the company to give credit in the payment of the premiums. However, if the general agent failed to collect the premiums within sixty days he had to settle with the company for the amount due it. In other words, he might extend credit for a longer time than sixty days, but, in that event, the company looked to him for the pro rata part of the premium due it. The only difference between the testimony for the plaintiff and that for the defendant on the question of extension of credit is that plaintiff claims he was given until after the Christmas holidays to pay the premium, while defendant's testimony is to the effect that the payment was to be made within sixty days.

Even if it be conceded that the letter of December 18th, 1913, was mailed to plaintiff, it was not a sufficient notice of the cancellation of the policy. It was in the alternative and requested plaintiff either to forward the premium or return the policy for cancellation. To cancel the policy, in accordance with the provision above set out, it is necessary to notify the insured in an unequivocal manner that the policy has been cancelled.

Not only was the policy not cancelled in accordance with its provision, but Ewart, on January 8th, 1914, and prior to the accident, actually collected in cash $20.00 of the premium due and took plaintiff's note, payable in ninety days, for the balance. It is insisted, however, that Ewart had no authority to accept this payment. Great stress is placed on the fact that he solicited insurance for the company as a side line and on the contention that he was doing this on a mere brokerage basis. The fact that he was soliciting insurance as a side line in no way affected the question of agency or the extent of his authority. Not a small proportion of the insurance business is done by men engaged in other pursuits who conduct their insurance department as a side line. Nor does calling Ewart's contract with the company a mere brokerage contract in any way change or affect his status as an agent, in view of the authority with which he was ostenssibly clothed. Ewart was not engaged in procuring insurance for several different companies. So far as this record shows, he represented the defendant alone, to the exclusion of all other companies, and was performing exactly the same services that any other agent would perform. He was intrusted by the company with a blank policy. He was authorized to solicit insurance and take applications. These applications were to be sent to the company for approval just as the applications from any other agent. It is conceded that he had the right to extend credit to the insured. In this instance he did extend credit. After extending the credit he collected a part of the premium in cash and took a note for the balance. Under the circumstances developed, it cannot be said, as a matter of law, that he was not authorized to do this. On the question of his agency and the extent of his authority, there was sufficient evidence to take the case to the jury and sustain its finding. Wortham v. Illinois Life Insurance Co., 107 S. W., 276; 22 Cyc., 1428; Kentucky Statutes, Section 633. The policy not having been

cancelled and the premium having, prior to the accident, been paid to an agent whose authority to receive it was sufficiently shown, it is difficult to see how the jury could have reached a different conclusion.

Judgment affirmed.