James E. GOODIN et al., Appellants,

v.

GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LTD., Appellee.

Court of Appeals of Kentucky.

Jan. 23, 1970.

**254**

Robert L. Milby, Hamm, Taylor, Milby & Farmer, London, Neville Smith, Manchester, Sutton, Forcht & Braden, Corbin, for appellants.

Charles Landrum, Jr., Lexington, for appellee.

REED, Judge.

In this declaratory judgment action the trial judge decided that a public liability insurance policy had been effectively cancelled by the insurer prior to the occurrence of an accident that resulted in assertion of liability against the insured. The cancellation upon which the insurer relies was allegedly effected by a mailed notice to the insured. The insured asserts that the insurer failed to adequately prove the mailing of the cancellation notice; that the notice was not addressed properly; and that the notice was not received. The effect of the judgment from which the insured appeals is to relieve the insurer from defending litigation instituted against the insured as a result of the accident and from paying or indemnifying the insured as a result of his payment of any judgment rendered in the action against him.

Appellant, Edward S. Gregory, and Audra M. Gregory, who was then his wife, secured through a local insurance agent in Manchester, Kentucky, three policies of automobile insurance from appellee, General Accident Fire and Life Assurance Corporation, Ltd., in December, 1963, and January, 1964. One of the policies, referred to in the evidence as number 89, was issued to "Audra M. Gregory" as the named insured whose address listed on the policy was "Manchester, Clay, Kentucky."

This policy was of the public liability type and covered the operation of a 1962 Chevrolet Corvair. Another policy, referred to in the evidence as number 90, was also issued to Audra M. Gregory, but it is not the subject of the present action. The third policy, number 96, was issued to the husband in the name "Edward S. Gregory"; this policy is not involved in the present controversy.

Edward and Audra Gregory were divorced shortly after the policies were issued and Mr. Gregory instructed the insurance company through its local agent to transfer policy number 89 and policy number 90 from his former wife to him as the named insured. The insurance company promptly prepared and transmitted through its local agent to Mr. Gregory two endorsements, one for each policy, to effect the change requested. Apparently because of a clerical error, the endorsement on policy number 89 mistakenly specified the named insured to be "Edward M. Gregory" while the endorsement on policy number 90 correctly named the insured as "Edward S. Gregory." No change had been requested on the form of the address and none was made. Gregory received the endorsements but said he did not look at them.

The 1962 Chevrolet Corvair, the subject of policy number 89, was involved in an accident in October, 1964. Liability was asserted against Edward Gregory by persons injured in the collision.

When Gregory called on General Accident to assume defense of the action against him, the insurance company refused. All interested parties thereupon joined in this declaratory judgment action.

The insurer introduced evidence to sustain its contention that policy number 89, as well as policy number 90 and policy number 96, had been cancelled in February of 1964, and that the insurance afforded by policy number 89 expired by the terms of the notice of cancellation in March, 1964. The significant evidence in this regard was the testimony of Mrs. Jean Bennett, the in-

surer's underwriting clerk who handled the cancellation of the policy concerned in this dispute.

Mrs. Bennett was employed in the state office of the insurer located in Louisville, Kentucky. She testified that she prepared the three cancellation notices. Two of the notices, those for policies numbers 90 and 96, were addressed to Edward S. Gregory; the third notice, for policy number 89, was addressed to Edward M. Gregory. The three notices were each placed in separate envelopes. Each of the envelopes contained the plainly printed return address of the insurer at its Louisville, Kentucky, state office. According to Mrs. Bennett, all these notices were mailed on February 20, 1964.

Her testimony concerning the actual mailing was essentially that regular company procedure was followed. In this instance, the notice of cancellation was prepared and certificates were attached to copies of it which recited that the original notice had been sent to the named insured by first-class mail. A post-office receipt was required and its existence recited on the company voucher forms. Mrs. Bennett said that the post-office receipt was made out for the three cancellation notices. She then delivered the notices with the post-office receipt form to another employee whose duty it was to deliver the material to the post-office, procure a receipt stamp on the post-office receipt form, and return it to the local state company office. Again it was company procedure that the original cancellation voucher with the post office receipt be sent to the company's head office in Chicago, Illinois; a copy of the cancellation voucher was retained in the local state office of the insurer. This state-office copy of the cancellation voucher recited the mailing of the notice and was accompanied by a recitation of the existence of the post-office receipt form. In response to a pretrial motion by the insured for production of documents, the state-office copy of the cancellation voucher was produced for inspection and copying.

At the trial, Mrs. Bennett testified without objection that the post office receipt was returned stamped by the post office evidencing receipt of the notice of cancellation by that authority. On cross-examination, she testified that the original post-office receipt was at the insurer's home office in accordance with regular company procedure. Although she further stated on cross-examination that she had no independent recollection of this particular mailing, on redirect examination she also said that the cancellation voucher refreshed her recollection and that she could positively assert that the notices were mailed. No motion was made to strike her testimony in whole or in part.

Despite argument pro and con in the zeal of advocacy concerning the existence of particular facts, we find that, on the record, there is little or no real controversy concerning either the actual facts or the applicable law. There is, however, a sharp and ably argued issue between the contending parties about the application of the law to the facts.

Where cancellation is authorized by the insurance contract, there can be a cancellation only upon strict compliance with the provisions of the contract; this appears to be the settled law in this jurisdiction. General Accident, Fire & Life Assur. Corporation v. Lee, 165 Ky. 710, 178 S.W. 1025; Carden v. Liberty Mut. Ins. Co., 278 Ky. 117, 128 S.W.2d 169. Thus, if the contract contains the standard provision here present that upon a "notice of cancellation mailed to the address of the insured stated in this contract, proof of mailing from the office of the insurer shall be sufficient notice," proof of mailing from the office of the insurer is sufficient to sustain a finding that the notice was effective without proof that such notice was received by the insured and even though the insured denies receipt of the communication. 17 Couch on Insurance 2d, section 67:182. See also Woodard v. Calvert Fire Ins. Co., Ky., 239 S.W.2d 267, and Ameri-

can Fire and Casualty Company v. Combs, Ky., 273 S.W.2d 37.

■ The named insured on policy number 89 by the terms of the endorsement was "Edward *M*. Gregory." The endorsement recited that it was part of the contract of insurance. An endorsement is later in time than the original policy; and it should prevail over any conflicting provisions of the policy. 1 Couch on Insurance 2d, section 4:36.

■ While we are not persuaded that the insured's evidence established the name "Edward S. Gregory" was ever specified as a named insured on policy number 89 itself, it is true that this correct name of the insured appeared on a daily sheet prepared by a company underwriter. By clerical error, the incorrect name "Edward *M*. Gregory" was placed on the endorsement. The insured argues that this mistake of the company was fatal to effective cancellation because the insurer had actual knowledge of the correct name of the insured.

Strict compliance with the contract required that notice be mailed to the insured named in the endorsement. The mistake related only to an erroneous middle initial in the insured's name. A mistake of this type is chargeable to the insurer where the insured has no opportunity to see and examine the contract. In this case, however, the insured by his own admission received the endorsement, which he requested, from the local agent and had adequate opportunity to see and examine it. We recognize the importance of strict enforcement of literal compliance with the contract by the insurer. It is necessary to apply that doctrine to achieve consistent results. The insured also contracts that only literal compliance will suffice. In this case the insured accepted the policy as endorsed which included an incorrect name and what is now claimed to be an inadequate address. The insurer strictly complied with the contract that the insured accepted.

Although the insured also complains about the ambiguous nature of the address, it was the address recited in the policy from the beginning. The complaint made concerning the manner of expression in the address

"Manchester, Clay, Kentucky,"

in the policy contrasted with

"Manchester, Clay, Kentucky"

appearing on the envelope in which the notice was mailed does not impress us any more than it did the trial judge. That Manchester is the county seat of Clay County, Kentucky, is a matter of judicial knowledge. The existence of a small community in the western part of the state called Clay does not demonstrate any error on the part of the trial judge in his conclusion that mail addressed in the words of this insurance contract would ordinarily be delivered to Manchester, Kentucky.

Therefore, we conclude that the arguments of the insured concerning the erroneous middle initial in his name and the ambiguous nature of the address cannot prevail over the strict compliance by the insurer with the terms of the endorsement under the circumstances here present where the insured had ample opportunity to see and examine the contract as endorsed. Cf. 17 Couch on Insurance 2d, section 67:173, p. 501.

■ The most troublesome aspect of the case is whether the trial judge's factual finding that the notice was actually mailed is supported by substantial evidence. In this area, two significant considerations are present: first, we are fully cognizant of and concur in the view that since mere mailing of a notice of cancellation is sufficient to cause cancellation of insurance protection with an attendant impact of possible economic disaster to the insured, the proof of mailing of such notice should be of a definite and specific character. See United States Fidelity and Guaranty Company v. Williams, 43 Ala.App. 205, 186 So.

2d 738; Service Fire Insurance Company of New York v. Markey, Fla., 83 So.2d 855; second, in modern commerce, where handling of a great deal of correspondence is inherent in the activity, it is completely unrealistic to expect complete and photographic memory like recollection of the mailing of a particular letter. Therefore, the proof of mailing may be satisfied by showing compliance with business usage. Provided, however, the business usage relied upon must embody sufficient evidentiary safeguards to satisfy the need for protection of the affected party in the particular transaction concerned. See 30 Am. Jur.2d, Evidence, section 1119. The business usage in this case satisfies the requirements which are necessarily high in the instance of insurance cancellation. A postal receipt is required. A record certification is required. A return address on the envelope is required. First-class mail is the means of transmittal.

 The insured complains because Mrs. Bennett did not produce the postal receipt at the trial. She was allowed to testify that the receipt existed and that the post office stamped it evidencing delivery of the notice to the post office without objection in any form at any time on the trial level. The only argument was directed at the weight to be given the evidence—no argument was directed to its admissibility.

The general rule that evidence introduced without objection is to be considered, although it would have been excluded had objection been made, applies to secondary evidence. See 88 C.J.S. Trial § 152, p. 298. Also where the "existence of a writing, as distinct from its contents, does not form the foundation of the action, although it is material to the controversy, and where the purpose of the evidence is not to maintain or destroy any right involved in the action, the production of the writing is not required, but its execution and existence may be proved by parol." 32A C.J.S. Evidence § 787, p. 109.

The post-office receipt was an auxiliary document to the cancellation voucher and was a part of the business practice of the insurer. Mrs. Bennett's testimony concerning the stamp of the post office might have been inadmissible because, since it related to the contents of the receipt, and the original was in the possession of the insurer, better evidence in the form of the original could be required. Her testimony concerning the existence of the receipt was clearly admissible. Hence, we must conclude that the trial judge's finding of fact that the notice was actually mailed was supported by substantial evidence.

Although the trial judge expressed the legal conclusion that the insurer had "substantially" complied with the contract, his factual findings clearly demonstrate that the insurer strictly complied with the contract. It follows, therefore, that the judgment of the circuit court declaring the policy effectively cancelled was correct.

The judgment is affirmed.

All concur.