Mrs. J. C. ACREE et al., Appellants,

v.

E. I. F. C., INC., Appellee.

Mary E. and Lynn NEAL, Appellants,

v.

E. I. F. C., INC., Appellee.

Wilber D. JOHNSON and Ruby L. Johnson, Appellants,

v.

E. I. F. C., INC., Appellee.

C. E. ATNIP and Earlene Atnip, Appellants,

v.

E. I. F. C., INC., Appellee.

Court of Appeals of Kentucky.

Nov. 23, 1973.

John B. Blackburn, Paducah, for appellants.

John Darnell, Max M. Smith, Frankfort, for appellee.

CULLEN, Commissioner.

We have four consolidated appeals involving claims by stockholders of E.I.F.C., Inc. (formerly known as Educators Investment Finance Corporation), against the corporation, for payment of the fair market value of their shares as of the time a merger was effected with T.S.I., Inc. The stockholders claimed to be "objecting shareholders" within the meaning of KRS 271.490, as to the merger, and therefore entitled to payment for their shares. The circuit court entered judgment rejecting all of the claims, and the stockholders have appealed.

Under KRS 271.415 and 271.490, to qualify as an "objecting shareholder" as to a merger a stockholder must (1) file written objection to the merger before the taking of the vote of the stockholders on the question of merger; (2) make written demand for payment for his shares within 20 days after the vote was taken; and (3) present his stock certificates to the corpo-

ration, to be stamped as objecting shares, before instituting suit to recover the value of the shares. Furthermore, it is a condition of recovery that the shares not have been voted in favor of the merger.

In the cases here before us, the Neals and the Atnips claimed that they had met all of the requirements of the statutes to qualify as objecting shareholders. The circuit court held, however, that the Neals had not presented their certificates to be stamped, and therefore did not qualify, and that the Atnips were *estopped* to claim the rights of objecting shareholders. The Acrees admittedly did not take the steps required by the statutes but they claimed that they were absolved from those requirements because the corporate officers did not advise them of their rights and of the procedures they were required to follow. The circuit court rejected that contention. The Johnsons also did not meet the statutory requirements, but they asserted that they did not receive adequate notice of the meeting at which the stockholders were to vote on the merger, and therefore could not be held to the statutory requirements as to objections. The circuit court rejected their claim on the basis that they had received notice of the meeting.

We shall consider each of the claims separately.

## ACREES

■ The only contention of the Acrees (who did not take any of the steps required of objecting shareholders and who in fact voted their stock *in favor* of the merger) is that they should be absolved of the statutory requirements because when they made a trip to the offices of the corporation, after receiving notice of the meeting for a vote on the proposed merger, the officers, though giving them information about the merger, did not inform them of their rights to become objecting shareholders. They do not claim that the officers did not fairly answer their questions; they argue simply that the officers should have *volunteered* information as to the Acrees' rights to become objecting shareholders. The Acrees do not cite any authority for that proposition, and we are not advised of any. Accordingly, we do not find error in the circuit court's rejection of the proposition.

## NEALS

■ The only requirement for qualifying as objecting shareholders which it is claimed by the corporation that the Neals did not comply with was the filing of written objection with the corporation prior to the stockholders' election on the merger question, in accordance with KRS 271.-415(4)(a). (The trial court erred in finding that the Neals had not presented their certificates for stamping, as required by KRS 271.415(4)(c), because it was admitted that they had done that.) Mrs. Neal testified that she had mailed a letter of objection several days before the meeting (the receipt of which was denied by testimony of an officer of the corporation), but the Neals argue that in any event they had no duty to file objection because they never received notice from the corporation of the election on the merger (they said they heard about the election from another stockholder). We believe their proposition is valid because, absent formal notice of the election on the merger, they could not fairly be held to the formal requirement of filing objection.

The treasurer-office manager of the corporation testified that under the notice procedures followed by the company the Neals "would have been sent a notice" although he could not say that he personally mailed a notice to them. The procedures he mentioned were that notices were addressed from Addressograph plates of which the company had one for each stockholder, and that if a particular stockholder did not respond to the first notice, another notice was sent to him. No other office employe testified.

In Goodin v. General Accident Fire and Life Assurance Corporation, Ky., 450 S. W.2d 252, this court said (p. 257):

"* * * Therefore, the proof of mailing may be satisfied by showing compliance with business usage. Provided, however, the business usage relied upon must embody sufficient evidentiary safeguards to satisfy the need for protection of the affected party in the particular transaction concerned. * * *"

In the Goodin case there were "evidentiary safeguards" in the form of a requirement of a postal receipt and the making of a record certification. In the instant case, however, there were no "evidentiary safeguards". Accordingly, we hold that the proof of mailing notice of the election was not sufficient.

Furthermore, the treasurer-office manager did not testify as to the *contents* of the notice alleged to have been mailed to the Neals, and did not introduce a copy of the notice. What appears to have been the kind of notice that was sent to the stockholders was introduced, however, in the *Johnson* case, and in the portion of this opinion, infra, dealing with the Johnson case we are holding that the form of the notice was insufficient. Therefore, even if the evidence in the Neal case were sufficient to support a finding that a notice was mailed to the Neals, it would not establish that the notice was adequate in its terms.

It is our conclusion that the Neals were entitled to be considered qualified as objecting shareholders.

## JOHNSONS

The Johnsons did not comply with the statutory requirements for becoming objecting shareholders, and they admit receiving a notice of the stockholders' meeting of July 13, 1968, but they contend that the notice was inadequate in that it did not state adequately the "purpose of the meeting" as required by KRS 271.295. The notice introduced by the Johnsons, as the only one received by them, was on the letterhead of Educators Investment Finance Corporation, was dated "June, 1968" and read as follows:

"Dear Stockholder:

In order for the Corporation to ratify the plan of reorganization, it is necessary that a majority of the shares of the Corporation be voted in favor of reorganization at this special meeting. Please sign the enclosed proxy for the special meeting and return your proxy in the self-addressed postage paid envelope to the Corporation by *June 15, 1968*.

The signing of this proxy in no way affects you voting your own stock if you are present at the special meeting July 13, 1968 in Parlor A of the Kentucky Hotel, Louisville, Kentucky.

Sincerely yours,
/s/ Mitchell Davis

Mitchell Davis
Executive Vice-President

PLEASE SIGN AND RETURN YOUR PROXY FOR THE JULY 13, 1968 MEETING.
IT IS MOST IMPORTANT THAT YOU SIGN AND RETURN YOUR PROXY TO-DAY."

It will be observed that the notice made no mention of a proposed *merger* and only indirectly indicated that the meeting of July 13 was one at which stockholders would vote. It further will be observed that the notice refers to an "enclosed" *proxy*. The Johnsons said that they received only the notice, and nothing else, but if it be believed that they also received the proxy, we find from examination of a proxy introduced in one of the other cases here on appeal that it too makes no mention of a proposed *merger*.

The treasurer-office manager of the company testified only that "notices of the meeting and proxies" were sent to all of the stockholders. He did not state the con-

tents of the notices nor introduce a copy of a notice. Thus there was no evidence to contradict the evidence of the Johnsons as to the form of the notice sent to them.

■ The only finding by the circuit court was that "Mrs. Johnson admitted receiving the notice of the stockholders' meeting to be held on July 13, 1968." The crucial issue was, of course, whether the notice sufficiently stated the *purpose* of the meeting. See 19 Am.Jur.2nd, Corporations, secs. 613, 614, pp. 133, 134. It is our opinion that the notice did not state the purpose of the meeting sufficiently to invoke as to the Johnsons the statutory requirements for their becoming objecting shareholders. How could the Johnsons be compelled to file written objections to the merger when they had received no notice that a merger was to be voted on?

It is our conclusion that by reason of the inadequacy of notice of the meeting the Johnsons were absolved of compliance with the requirements that they file written protest before the meeting and demand payment for their shares within 20 days after the meeting. (They did comply with the requirement of presenting their stock certificates to be stamped.) Accordingly, they were entitled to the rights of objecting shareholders.

## ATNIPS

Admittedly, the Atnips complied with all of the statutory requirements to become objecting shareholders, but the circuit court held that they were *estopped* to claim the rights of objecting shareholders by reason of Mr. Atnip's actions as a member of the board of directors of the corporation, in relation to the merger proposal.

Mr. Atnip was employed as a security officer for TVA at Kentucky Dam and before that had for a number of years been principal of a high school. He and his wife held 3396 shares of the common stock of Educators Investment Finance Corporation. In February 1968, at a stockholders'

meeting, he nominated himself for membership on the board of directors, and was elected. The first meeting of the board of directors thereafter occurring was on April 18, 1968, which was the meeting at which the board voted to submit to a vote of the stockholders the question of the merger. Atnip testified that this was the first time he had heard any mention of the merger, and that he joined the other directors in a unanimous vote to submit the proposition to the stockholders because "I was just about like a farm boy at a big bank directors meeting."

Subsequent to the April 18 meeting, however, Atnip became concerned and made some inquiries of accountants with respect to the merger proposal. As a result of those inquiries he solicited and obtained the signatures of six or seven other directors on a petition for a special meeting of the board to reconsider the merger proposal. He presented the petition to the president, and according to the by-laws of the corporation the petition was sufficient to require the president to call a special meeting of the board. However, the president did not call a special meeting. Instead, the executive director sent a letter to each board member stating that the president had asked the executive director to "write you concerning an *informal* meeting of the board" (our emphasis) to discuss the merger plan, and further stating that "this is not an official meeting [so] each director will be expected to bear his own expenses."

The informal meeting, with a small attendance, was held on June 10, 1968. Atnip presented some "facts that I had gathered and evidence that I had collected" and urged a reconsideration of the merger. There was some discussion but no action was taken.

The stockholders' meeting for the vote on the merger was scheduled for July 13, 1968. The board of directors met briefly on that day, before the stockholders met, and adopted a resolution changing the

name of the corporation, as an incident to the merger. Atnip voted for that resolution and did not raise the question of reconsideration of the merger.

■ On the foregoing facts the circuit court found that the Atnips were estopped to claim the rights of objecting shareholders. In our opinion the facts do not warrant estoppel. While a director owes a fiduciary duty to the stockholders, the duty is one to exercise good faith. Atnip was not experienced in the corporation field and at the April 18 meeting was confronted with the choice of voting with the other directors or making an issue with no basis of knowledge. After the meeting he made a good faith effort to have the merger reconsidered. He was frustrated by some fast footwork on the part of the officers. Later, at the June 13 meeting, he was justified in feeling that it would be futile to reargue the proposition.

■ An essential element of the doctrine of estoppel is that the person invoking the estoppel have been induced to change his position in reliance upon the conduct of the other party. Here, even if it be accepted that Atnip violated his fiduciary duty in not voting against the merger, there is no suggestion that any stockholder was induced, by Atnip's votes as a director, to vote for the merger. In fact, no stockholder is asserting estoppel in this case; it is the corporation officers who are making the assertion.

It is our conclusion that the circuit court erred in invoking an estoppel against the Atnips.

## CONCLUSION

In the Acree case the judgment is affirmed. In the Neal, Johnson, and Atnip cases the judgments are reversed with directions to enter judgment for the Neals, Johnsons and Atnips.

All concur.